UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
- - - - - - - - - - - - - - - - - - - - - - - - - -X
DAVID FLOYD, *et al.*,

              Plaintiffs-Appellees,

  -against-

THE CITY OF NEW YORK,

              Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

**Docket No. 13-3088**

**PLAINTIFFS-APPELLEES' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO EXPEDITE**

## PRELIMINARY STATEMENT

Plaintiffs-Appellees submit this memorandum of law in opposition to the motion of Defendant-Appellant City of New York ("City") to expedite the merits briefing schedule for, and this Court's consideration of, the above-captioned appeal (Dkt # 44).[1] The City's motion, which mischaracterizes the District Court's August 12, 2013 Liability and Remedies Decisions and well-established Fourth and Fourteenth Amendment case law, is devoid of facts or arguments establishing good cause for expediting this appeal. The City seeks in effect the maximum period permissible for its opening brief while also asking to shorten the time that Plaintiffs and this Court have to address and consider a massive record and

---

[1] We note that the Liability and Remedies Decisions are not yet ripe for appeal, *see Taylor v. Brd of Ed.*, 288 F.2d 600, 602 (2d Cir. 1961), *Henrietta D. v. Guiliani*, 246 F.3d 176 (2d Cir. 2001), and Plaintiffs-Appellees intend to move to dismiss this appeal for lack of jurisdiction. By submitting this opposition to the City's motion to expedite briefing and consideration, we do not concede jurisdiction.

1

complex constitutional questions. The expedited briefing schedule and consideration sought by the City would unfairly prejudice Plaintiffs-Appellees, unduly burden this Court, and would likely lead to piecemeal appeals that would thwart, rather than facilitate, a clear and thoughtful resolution of the serious legal concerns with stop and frisk in New York City. Accordingly, the City's motion to expedite the present appeal should be denied**.**

## BACKGROUND

### A.    The District Court's August 12, 2013 Remedies Decision

In its 39-page August 12, 2013 Remedies Decision, the District Court did not order the City to implement any changes to the NYPD's current stop, question, and frisk policies and practices "at this time." *See* Dkt # 44, Ex. A (Remedies Decision) at 13. Instead, the District Court ordered a two-stage remedial *process* through which the parties, together with a Court-appointed monitor and eventually several other stakeholders on the stop-and-frisk issue, will attempt to work together to develop a series of reforms to address the identified constitutional problems with the NYPD's stop-and-frisk policies and practices, each of which must be submitted to and approved by the District Court before the City is required to implement them. *Id*. at 13-14, 30-32.

In the first stage, which the District Court has termed the "Immediate Reforms," the parties will work with the monitor to develop reforms in five areas:

(1) changes to NYPD written policies and officer training regarding racial profiling and the constitutional standards for what constitutes a forcible *Terry* stop and when such a stop, a frisk, or a search of a pedestrian is permissible, *id*. at 14-18;

(2) revisions to NYPD stop-and-frisk paperwork that will require officers to provide narrative explanations for the bases of the stops-and-frisks they conduct and additional training and disciplinary measures to ensure that officers do so, *id*. at 18-23;

(3) supervision, monitoring, and disciplinary reforms necessary to ensure that NYPD officers conduct stops-and-frisks in compliance with the Fourth and Fourteenth Amendments, *id*. at 23-24;

(4) issuance of a FINEST message -- i.e., an internal NYPD memorandum transmitted to all commands -- explaining the outcome of the present litigation and a description of the reforms listed above, *id*. at 25; and

(5) a one-year pilot project for officer use of body-worn cameras in five (out of 76) NYPD precincts. *Id*. at 25-28.

Notably, although requiring the development of milestones and timelines, the District Court did not set a firm deadline for the development of any of these reforms, requiring only that they "be developed and submitted to the Court as soon as practicable," *id*. at 14, and even suggested that the supervision and disciplinary

reforms could be deferred to the second stage of the remedial process. *Id*. at 24. The District Court also specified that none of the reforms will actually have to be implemented until they are approved by the District Court and did not set any timeline for such approval. *Id*. at 14.

The second stage of the remedial process, which the District Court has termed the "Joint Remedial Process," requires the parties, for a period of *six-to-nine months*, to work together with the monitor, a Court-appointed facilitator, and a wide array of other stakeholders on the stop-and-frisk issue, including members of communities most heavily impacted by stop and frisk, grassroots, advocacy and religious organizations, District Attorney offices, police organizations, and local elected officials, to develop a set of additional reforms that are "no broader than necessary to bring the NYPD's use of stop and frisk into compliance with the Fourth and Fourteenth Amendments." *Id*. at 28-30. Again, the City will not have to implement any reforms developed through this Joint Remedial Process unless and until they are submitted to and approved by the District Court, and the District Court set no timeline for such submission and approval. *Id*. at 31.

**B.     Procedural History of the Present Appeal and the Proposed Expedited Briefing Schedule**

The City filed its Notice of Appeal in this case on August 16, 2013, which indicates that it is appealing from the District Court's August 12, 2013 Liability and Remedies Decisions. *See* Dkt # 1. On August 29, 2013, the City filed its Civil

4

Appeal Pre-Argument Statement (Form C) with this Court, in which it conceded that neither the Liability nor Remedies Decision is a final order or judgment of the District Court. Dkt # 22 at 1-2.

On September 11, 2013, 30 days after receiving the District Court's Liability and Remedies Decisions and almost four weeks after filing its Notice of Appeal, the City filed the present motion seeking this Court's expedited consideration of the present appeal and the following expedited briefing schedule for the parties' merits briefs: (1) the City's opening brief to be due by November 12, 2013 (i.e., 92 days after issuance of the Decisions being appealed); (2) Plaintiffs-Appellees' answering brief to be due by January 13, 2014 (i.e., 62 days later), and (3) the City's reply brief to be due on January 28, 2014. Dkt # 44 at 4.

On September 13, 2013, the City, with the consent of the Plaintiffs-Appellees, moved this Court to permit the City to file an oversized 28,000-word opening brief, Plaintiffs-Appellees to file an oversized 28,000-word answering brief, and the City to file an oversized 14,000-word reply brief. Dkt # 47 at 3.

## ARGUMENT

**A.     Legal Standards Governing A Motion to Expedite An Appeal**

Under Second Circuit Local Rule 31.2, an appellee may have up to 91 days from the filing date of the appellant's opening brief to file his or her answering brief. *See* Local Rule 31.2(a)(1)(B). This Court can depart from this rule and

5

expedite the briefing schedule and consideration of this appeal only upon a showing of "good cause." 28 U.S.C. §1657(a) (federal courts "shall expedite the consideration of any action. . . if good cause therefor is shown"); *see also* Fed. R. App. P. 2.[2] While the existence of good cause to expedite an appeal will of course depend on the facts of the case at issue, the legislative history of 28 U.S.C. § 1657 indicates that good cause exists where (a) "a failure to expedite would result in mootness or deprive the relief requested of much of its value," (b) "would result in extraordinary hardship to a litigant," or (c) where the public interest . . . is particularly strong." H.R. Rep. No. 98-985 at 6 (1984), *reprinted in* 1984 U.S.S.C.A.N. 5779, 5784.

**B.   The City Has Not Shown Good Cause For Expediting the Present Appeal**

As an initial matter, any claims of urgency by the City are seriously undermined by its having waited so long, one month, from date of the District Court's Liability and Remedies Decisions to even file its motion to expedite. *See Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) (Denying motion to expedite "because the plaintiffs have not proceeded expeditiously" by allowing six weeks to pass between the appealed-from order and the motion to expedite). Moreover, under the City's proposed briefing schedule, the City will have 92 days from the

---

[2] Local 31.2(b) provides for automatic expedition of certain categories of appeals, but the present appeal does not fit into any of those categories.

6

date of the appealed-from District Court orders and 88 days from the date of its Notice of Appeal and filing of the District Court record with this Court to file its merits brief, which is virtually equal to the maximum amount of time allowable under a non-expedited briefing schedule. *See* Local Civil Rule 31.2(a). Thus, the only real purpose served by the City's proposed briefing schedule is to significantly shorten Plaintiffs-Appellees' time to file their answering brief and this Court's time to consider what the City concedes is a massive record, which, as discussed below, would be unfairly prejudicial to Plaintiffs and unduly burdensome to this Court.

Meanwhile, neither of the two arguments which the City offers in support of expediting the briefing schedule and this Court's consideration of the present appeal establish good cause for doing so. First, the City claims that it needs "a prompt opportunity" to challenge the District Court's ruling that the NYPD unfairly targets minorities for stops-and-frisks because that ruling has "clouded" public perception of the NYPD, "compromising confidence in the integrity of law enforcement" and therefore hindering the NYPD's ability to effectively fight crime. Dkt # 44 at 4-5. This argument defies credulity. It has been the unlawful and unconstitutional practices of the NYPD which has compromised confidence in the integrity of law enforcement, not the courageous efforts of Plaintiffs to remedy these constitutional violations, or the decision by the District Court, which found

based on an abundant record that such constitutional violations exist and have existed for many years.

The City's argument also ignores that widespread public concern about illegal and racially-biased stops and frisks by the NYPD already existed well *before* the District Court's August 12, 2013 Liability Decision. *See*, *e.g.*, Dkt # 44, Ex. B (Liability Decision) at 61-63 (discussing 1999 New York State Attorney General's Report finding that the NYPD had engaged in suspicionless and race-based stop and frisks); *Quinnipiac University Poll*, February 28, 2013, available at www.quinnipiac.edu/ images/polling/nyc/nyc02282013. pdf/ (finding that majority of New York City residents disapprove of the NYPD's stop-and-frisk practices, 55-39%); Office of the Public Advocate for the City of New York, *Stop and Frisk and the Urgent Need for Meaningful Reforms* (May 2013), available at http://pubadvocate.nyc.gov/ stop-frisk; Erin Durkin, "City Council Passes Two Bills to Rein in the NYPD's Use of Stop-and-Frisk," *New York Daily News*, June 27, 2013, available at http://www.nydailynews.com/new-york/city-council-set-pass-2-bills-rein-nypd-stop-frisk-article-1.1383730. Moreover, as illustrated by recent court filings from several New York City elected officials and community organizations in opposition to the City's motion in the District Court for a stay of the Remedies Decision, attached hereto as Exhibits A-E, it is not prompt review of the Liability Decision by this Court that will restore public trust in the NYPD, but,

8

rather, the remedial processes established by the District Court, which can and should proceed regardless of when this Court hears the merits of the City's appeal.

Second, the City devotes the majority of its moving brief to attacking the merits of the District Court's Liability Decision, which the City argues "has strong potential for disruption in law enforcement, as it throws considerable doubt on whether officers may continue to rely upon the traditional building blocks of reasonable suspicion under *Terry v. Ohio* and its progeny." Dkt # 44 at 5-9. However, besides relying on gross mischaracterizations of both the Liability Decision itself[3] and well-established Fourth and Fourteenth Amendment case law,[4]

---

[3] While it is premature to respond to all of the City's mischaracterizations of the District Court's rulings at this stage of the present appeal, Plaintiffs-Appellees note, by way of example, the following mischaracterizations of the District Court's Liability Decision contained in the City's motion to expedite:

- The District Court did not rule that the stop rationales "furtive movements", "suspicious bulges," and "high crime areas" used by officers to document stops on NYPD UF250 forms "are 'so vague' and 'subjective' as to indicate an 'apparently unjustified stop." Dkt # 44 at 6 (citing Liability Decision) at 8. In actuality, the District Court merely found that these stop rationales "cannot reliably demonstrate" reasonable suspicion "[w]ithout an accompanying narrative explanation for the stop." Dkt # 44, Ex. B (Liability Decision) at 8.

- The District Court did not base its Fourth Amendment ruling only on "statistical data derived exclusively from check boxes on a single piece of police paperwork." Dkt # 44 at 6. In fact, the Court explicitly stated that it based its finding that the NYPD had engaged in widespread practice of suspicionless stops-and-frisks on statistical evidence, "institutional evidence of inaccurate training," "testimony of officers who did not know the constitutional standard for a frisk," *and* "anecdotal evidence of routine unconstitutional frisks in this case." Dkt # 44, Ex. B (Liability Decision) at 181.

[4] Plaintiffs-Appellees also note, by way of example, the following mischaracterizations of Fourth and Fourteenth Amendment case law contained in the City's motion to expedite:

this argument ignores that under the remedial framework established by the District Court, the NYPD will not be required to actually implement any changes to its stop-and-frisk policies, to train its officers differently on the Fourth Amendment and racial profiling, or to change how it supervises, documents, or monitors officer stop activity until the District Court's final approval of the Immediate Reforms to be developed under the auspices of the monitor, which, as discussed above, is not imminent. Thus, the supposed "disruption" feared by the City is unlikely to occur, and the City will still have a meaningful opportunity to seek relief from the final reforms ultimately approved by the District Court,

---

- The City's contention that a federal court must factor in the "compelling governmental interest" in preventing crime when determining if a *Terry* stop violates the Fourth Amendment, Dkt # 44 at 8-9, is flatly contradicted by the United States Supreme Court's decision in *Brown v. Texas*. 443 U.S. 47, 52 (1979)("[E]ven assuming that [crime prevention] is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it").

- The City's reliance on this Court's decision in *Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000), to argue that a stop based on reasonable suspicion cannot, by definition, violate the Equal Protection Clause of the Fourteenth Amendment, Dkt # 44 at 8, ignores that the Court in *Brown* explicitly referenced Judge Newman's opinion in *United States v. Scopo*, 19 F.3d 777, 786 (2d Cir. 1994), suggesting that while racially pretextual traffic stops based on probable cause did not violate the Fourth Amendment, they could violate the Equal Protection Clause. *See Brown*, 221 F.3d at 338. Moreover, the City's contention that an investigatory stop can violate the Equal Protection Clause only if it is based "solely upon race, without more", Dkt # 44 at 8, mischaracterizes the *Brown* holding and ignores the Supreme Court's admonition that a Plaintiff does not need to prove that race was the sole, or "even the dominant or primary" reason for a governmental decision to succeed on an Equal Protection claim, but rather, must only show that race is a "motivating factor" in the challenged decision. *See Village of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 255-266 (1977).

10

without the briefing schedule or this Court's consideration of the present appeal being expedited.

**C.     The Proposed Expedited Briefing Schedule Would Unfairly Prejudice Plaintiffs-Appellees**

The City's proposed briefing schedule, under which Plaintiffs-Appellees would only have 62 days, including the Thanksgiving, Christmas, and New Year's holidays, to file their answering brief, would unfairly prejudice Plaintiffs-Appellees. Plaintiffs-Appellees will be responding to an oversized 28,000-word merits brief from the City addressing legal issues of great "complexity and scope", *see* Dkt # 47 at 3, and will have to review an approximately 8100-page trial record and 400 trial exhibits to do so. *See* Dkt # 22 at 1-2. Moreover, Plaintiffs-Appellees will at the same time have to continue working with the Court-appointed monitor, facilitator, and the City's trial counsel on the remedial processes established by the District Court and, unlike the City, will not have the benefit of a completely separate set of lawyers to work on the present appeal.[5] Since the City will have 92 days to complete and file its merits brief, there is no legitimate reason to deny Plaintiffs-Appellees the same amount of time to complete and file theirs.

---

[5] None of the five attorneys who have appeared on behalf of the City in this appeal are participating in the proceedings in the District Court. *See* Dkt # 1 at 1, 245-57; Dkt ## 8,9,15, and 21.

### D. Expedited Consideration of the Present Appeal Would Unduly Burden this Court and Likely Lead to Piecemeal Appeals

The expedited consideration sought by the City will also unduly burden this Court. To resolve the merits of this appeal, this Court will have to review an 8100-page trial record and 400 trial exhibits, as well as up to 70,000-words of merits briefing from the parties on legal issues of great complexity and scope. *See* Dkt # 22 at 1; Dkt # 47 at 3. Plaintiffs-Appellees agree with the City that this appeal implicates issues of tremendous public importance, which is all the more reason for this Court to review and consider the record and the parties' arguments as carefully as possible before ruling. Given this Court's current caseload and the size of the record and briefs it will have before it on this appeal, reducing the time for the Court to consider and resolve this appeal will make such careful consideration extremely difficult, if not impossible. *See American Airlines, Inc. v. Civil Aeronautics Bd.*, 445 F.2d 891, 895 n.2 (2d Cir. 1971) (Friendly, J.) ("[T]he need for speedy decision tends against the ample time and freshness of mind for private study and reflection in preparation for discussion and the writing of helpful opinions.") (internal quotations omitted).

Finally, while "[t]he prompt and orderly administration of justice has long been a subject of the most pressing concern for this Court," *United States v. Raimondi*, 760 F.2d 460, 61-62 (2d Cir. 1985), expediting this Court's consideration of this appeal, prior to the District Court's ordering any final

12

injunctive relief, could lead to piecemeal appeals, which run counter to this important judicial goal. Expediting this appeal will most certainly result in this Court ruling on the validity of the District Court's liability findings and remedial process framework before any final injunctive remedies developed through the remedial process are approved and so ordered by the District Court. If this Court were to uphold even only a part of the District Court's liability finding and remedial process framework, which Plaintiffs-Appellees submit is highly likely, then the City will likely file additional appeals challenging one or more of the final injunctive remedies subsequently developed in the remedial process and so-ordered by the District Court. Such repeated court battles serve neither this Court's nor the public's interest in achieving a singular, comprehensive, and final resolution of this important and long-running litigation.

## CONCLUSION

For the reasons stated above, Plaintiffs-Appellees respectfully request that Appellant City of New York's motion to expedite the present appeal (Dkt # 44) be denied, and that Plaintiffs be given 91 days from the date on which the City files its opening merits brief to file their answering brief.

Dated:   New York, New York
         September 17, 2013

COVINGTON & BURLING, LLP

            /s/ Eric Hellerman
Eric Hellerman
Kasey Martini
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
ehellerman@cov.com
kmartini@cov.com

CENTER FOR CONSTITUTIONAL RIGHTS
Darius Charney
Sunita Patel
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464
dcharney@ccrjustice.org
spatel@ccrjustice.org

BELDOCK LEVINE & HOFFMAN, LLP
Jonathan C. Moore
Jenn Rolnick Borchetta
99 Park Avenue, Suite 1600
New York, NY 10016


(212) 277-5800
jmoore@blhny.com
jborchetta@blhny.com

*Attorneys for Plaintiffs-Appellees*

Case: 13-3088    Document: 50-1    Page: 15    09/17/2013    1043123    15