IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------------------- X
DAVID FLOYD, et al.,                  :

    Plaintiff,                        :
                                   Docket No. 13-3088
  -against-                            :

CITY OF NEW YORK, et al.,             :

    Defendant.
------------------------------------- X

MEMORANDUM OF SERGEANTS BENEVOLENT ASSOCATION
IN SUPPORT OF DEFENDANTS-APPELLANTS'
<u>MOTION FOR A STAY</u>

                                                 ANTHONY P. COLES
                                                 COURTNEY G. SALESKI
                                                 (seeking admission)
                                                 DLA PIPER LLP (US)
                                                 1251 Avenue of the Americas
                                                 New York, New York 10020
                                                 (212) 335-4500

                                                 *Counsel for Movants*
                                                 *Sergeants Benevolent Association*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND
## FINANCIAL INTEREST

The Sergeants Benevolent Association (SBA) is a an independent municipal police union whose membership consists of approximately 13,000 active and retired sergeants of the NYPD. The SBA has no parent, subsidiaries, or affiliates that have issued shares or debt securities to the public.

_____/s/_____
Anthony P. Coles

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

The Sergeant's Benevolent Association (SBA) submits this memorandum as amicus curiae[2] to highlight points important to the consideration of irreparable harm—one of the factors that guides this Court's disposition of a motion for a stay. The District Court's erroneous application of constitutional law has resulted in substantial confusion among law enforcement officers in the field and has chilled legitimate law enforcement activity by sergeants and the officers that they supervise. These considerations weigh heavily in favor of granting the City's motion for a stay of the injunction entered by the District Court in this case.

## INTEREST OF AMICUS CURIAE

The SBA is an independent municipal police union whose membership consists of approximately 13,000 active and retired sergeants of the NYPD. The SBA is the collective bargaining unit for those sergeants in their contract negotiations with the City of New York (the "City"). Sergeants spend their days working in the field, on patrols, conducting surveillance, and in numerous other situations that bring them directly in contact with potential suspects. In addition, sergeants are responsible for supervising subordinate officers, directing their patrols, reviewing records of their stops, and otherwise training, advising, and disciplining them. There is no group that can serve as a better voice for the police on the ground, dealing with the day-to-day realities of law enforcement in New York.

---

[1] In accordance with Local Rule 29.1(b), amicus states that no party's counsel authored this memorandum in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person—other than the amicus, their members, or counsel—contributed money that was intended to fund preparing or submitting the brief.

[2] In addition to submitting this memorandum and accompanying motion, the SBA also has sought to intervene under Federal Rule of Civil Procedure 24 in this matter in the district court and filed a notice of appeal from the relevant orders. (ECF ## 387, 388); *see Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("We think the better practice is for such a nonparty to seek intervention for purposes of appeal . . . ."); *Drywall Tapers & Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO v. Nastasi & Associates Inc.*, 488 F.3d 88, 95 (2d Cir. 2007) ("Since Local 52 filed a notice of appeal within 30 days of the Order issuing the Consent Injunction, albeit at a time when it was not a party, its status as a party, if intervention is granted, should permit it to renew its appeal."). The SBA's motion to intervene was filed on September 11, 2013. Responsive filings are due on October 11, 2013.

## ARGUMENT

Irreparable harm will result if this Court does not order the stay requested by the City and, in fact, such harm has already resulted from the District Court's orders. The District Court's erroneous application of constitutional law, which is described by the City (at 7 to 23), has resulted in substantial confusion among law enforcement officers in the field and has chilled legitimate law enforcement activity by sergeants and those officers that they supervise. The District Court seemed to understand this immediate consequence of the Liability Order when it noted that issuing a stay would encourage NYPD to return to its "former" stop-and-frisk practices (Exhibit C to Appellants-Defendants' Motion, at 10). The District Court implicitly acknowledged the immediate impact that its Orders are having in the real world of policing. The District Court did not recognize that, in reality, it is actually the confusion created by its Orders that is chilling legitimate law enforcement activity. Law enforcement simply has been left to question under what circumstances it can do its job without fear of discipline or liability. If the Court's decision is incorrect, the harm that it caused and will continue to cause to the City and community by chilling legitimate law enforcement activity resulting in a negative impact on public safety and officer safety is irreparable. *See, e.g., See Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1496–98 (9th Cir.1995) (ban of timber removal could cause state and county intervenors irreparable harm due to inability to undertake "their legal duties to protect the public safety by preventing and fighting wildfires"), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Texas Eastern Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 760 (M.D. Pa. 1993) (finding the irreparable harm prong satisfied in suit by pipeline company to enjoin interference with pipeline right-of-way on the basis of the serious threat of danger to both the public and the environment without proper pipeline

inspections and maintenance); *cf. Rogers Grp., Inc. v. City of Fayetteville, Ark.,* 629 F.3d 784, 789 (8th Cir. 2010) (holding that district court did not err when it found that loss of goodwill among customers and preventing business from providing services to its clients constituted irreparable harm).

The District Court's decisions have thrown into doubt how law enforcement officers, and particularly sergeants as both supervisors and officers in the field, conduct their business and serve the community. For example, in practice, the number of police encounters—where officers do not stop, but just speak to citizens—has dropped significantly. Such encounters are critical to the public service of policing. Law enforcement officers often collect imperative intelligence by simply talking to community members. But the District Court's Orders have compromised their ability and will to rely on traditional principles of policing to conduct encounters. Such a result is unsurprising given that it appears that, under the District Court's Orders (which of course are not clear), police officers potentially should not conduct encounters without telling the individuals that they are free to leave, as the District Court stated:

> There is no constitutional requirement for officers to inform people that they are free to leave. . . . Nevertheless, the Constitution does not prohibit a police department from adopting this policy or a court from ordering it as a means of avoiding unconstitutional stops, where—as here—officers have been incorrectly trained on the definition of a stop.

(Exhibit A to Appellants-Defendants' Motion, at 15 n.38 (citations omitted)). The District Court's decision undermines confidence in directives historically used by the NYPD and necessary to law enforcement's successful policing, but does not give any clear and correct guideposts for the officers to follow. Moreover, the District Court's decision has chilled important, proper, and effective policing activity, such as encounters.

Likewise, in practice, the number of *Terry* stops has dropped significantly. The Orders of the District Court have disrupted this practice because police officers are uncertain as to whether

they can rely on traditional factors for establishing reasonable suspicion and historical directives provided by the NYPD. And sergeants are reluctant to give directives because they cannot rely on those grounded in sound legal precedent that they have previously used and because the District Court's decisions sets no clear guideposts. Because the District Court's Orders are unclear as to what officers can do, officers are reluctant to take any action that could be viewed in hindsight as unconstitutional knowing that they could be judged solely by the quality of their paperwork years later (as the Court improperly concluded that over 200,000 stops in this case were unconstitutional based solely on a piece of police paperwork between 2004 and 2012 relating to each of those stops). The exposure to yet-undefined discipline and liability has chilled lawful police response and proper police activity in the community.

In fact, as the City noted in its letter to the District Court, *Terry* stops are down by more than 50% in the second quarter of 2013 compared to the second quarter of 2012. *See* City Stay Ltr. at 3. The District Court characterized this fact as a "positive step toward remedying an improper practice." (Exhibit C to Appellants-Defendants' Motion, at 10.) But, even if one accepts the District Court's remarkably flawed reasoning and allows for the conclusion that 200,000 of 4.4 million stops for which the District Court reviewed police paperwork were unconstitutional over the course of June 2004 to June 2012, that logic only suggests that 4.5% of those stops were unconstitutional. The fact that stops plummeted by 50% logically and mathematically suggests that constitutional stops have been chilled this last quarter.

Moreover, the District Court's Orders appear to have significantly undermined public confidence in NYPD law enforcement officers. Sergeants and the officers they supervise have experienced decreased cooperation and increased hostility from the community. This should not be surprising in light of the fact that the District Court's Opinions suggest that these public

servants have committed numerous constitutional violations, including the novel "indirect racial profiling"—the District Court's newly minted form of intentional discrimination. Because community cooperation is critical to the public service of policing, the decreased cooperation and increased hostility have resulted and will result in irreparable harm by negatively impacting public safety. This Court's stay could re-establish confidence by signaling that the issues presented are worthy of the stay.

In any event, the District Court's Orders created substantial confusion that has constrained police from conducting lawful police activity, which results in increased risk of harm to the public and to the officers. Moreover, the hesitation that the District Court's Orders have caused and will continue to cause endangers public and officer safety because, as the District Court recognized, officers "on the beat mak[e] split-second decisions in situations which may pose a danger to themselves and others." (Exhibit B to Appellants-Defendants' Motion, at 118); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving"); *People v. Benjamin*, 51 N.Y.2d 267, 271 (1980) (A police officer should not be required "to await the glint of steel before he can act to preserve his safety."). There can be no doubt that the chilling of lawful police encounters, stops, and other enforcement activity, as well as the decrease in community cooperation, have a negative impact on public safety throughout the City. Simply put, the police cannot police under these circumstances of uncertainty. As a result, there will be and already has been irreparable harm and this Court should order the requested stay.

## CONCLUSION

For the foregoing reasons, the SBA respectfully requests that the Court grant the City's motion for a stay pending appeal.

                                                        Respectfully submitted,

                                                        _____/s/_____

                                                       ANTHONY P. COLES
                                                       COURTNEY G. SALESKI
                                                          (seeking admission)
                                                         DLA PIPER LLP (US)
                                         1251 Avenue of the Americas
                                               New York, New York 10020
                                                             (212) 335-4500

September 27, 2013                                                 *Counsel for Movants*
                                                       *Sergeants Benevolent Association*