# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

DAVID FLOYD, *et al.*,

Plaintiffs-Appellees,

v.

CITY OF NEW YORK, *et al.*,

Defendants-Appellants.

**Docket No. 13-3088**

## BRIEF *AMICI CURIAE* OF MICHAEL B. MUKASEY AND RUDOLPH W. GIULIANI IN RESPONSE TO PETITIONS FOR *EN BANC* CONSIDERATION OF ORDER OF DISQUALIFICATION

Daniel S. Connolly, Esq.
Rachel B. Goldman, Esq.
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 508-6100
Facsimile:  (212) 508-6101
Email: daniel.connolly@bgllp.com
Email: rachel.goldman@bgllp.com

*Counsel for Amici Curiae Michael B. Mukasey and Rudolph W. Giuliani*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ...................................................................................... 3

I.     There Is No Basis For
*En Banc* Review Of The Mandate ........................................ 3

      A.    The Petitions Do Not Comply With The Rules
Governing Applications For *En Banc* Consideration ................ 4

      B.    The Mandate Does Not Conflict With Supreme
Court Precedent Or Prior Decisions Of This Court .................... 5

      C.    There Are No Questions Of Exceptional Importance ................ 8

      D.    The Suggestion That The District Judge's
Constitutional Rights Were Violated Does
Not Present A Matter Of Exceptional Importance .................. 10

      E.    There Are No Legitimate Constitutional Concerns ................ 12

II.    The Mandate Was Not Procedurally Deficient ...................... 14

      A.    Rule 21 Does Not Apply And Does
Not Confer A Right To Be Heard ............................................ 14

      B.    The Panel Had Appellate
Jurisdiction To Issue The Mandate .......................................... 17

III.   The Decision To Reassign These Cases Was Substantively
Sound .................................................................................... 18

      A.    The Panel Had A Sufficient Basis To Order
Reassignment ........................................................................ 18

      B.    The District Court Submission Provides
Further Ground For Reassignment ........................................... 21

CONCLUSION ................................................................................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Asherman v. Meachum,*
  957 F.2d 978 (2d Cir. 1992) .................................................................9

*Bellamy v. Cogdell,*
  974 F.2d 302 (2d Cir. 1992) .................................................................8

*Daniels v. City of New York,*
  No. 99 Civ. 1695 .................................................................................19

*Dingle v. City of New York,*
  728 F. Supp. 2d 332 (S.D.N.Y. 2010) ...............................................12

*Doe v. Dep't of Pub. Safety ex rel. Lee,*
  271 F.3d 38 (2d Cir. 2001) .................................................................12

*Evans v. Lynn,*
  537 F.2d 571 (2d Cir. 1975) .................................................................8

*Hayden v. Pataki,*
  449 F.3d 305 (2d Cir. 2006) .................................................................9

*Hilbert v. Dooling,*
  476 F.2d 355 (2d Cir. 1973) .................................................................8

*In re Charge of Judicial Misconduct,*
  47 F.3d 399 (Jud. Council of the 10th Cir. 1995).........................3, 22

*In re Drexel Burnham Lambert Inc.,*
  869 F.2d 116 (2d Cir. 1989) .................................................................9

*In re German and Austrian Holocaust Litigation,*
  250 F.3d 156 (2d Cir. 2001) ...............................................................16

*LaSalle Nat'l. Bank v. First Conn. Holding Grp., LLC,*
  287 F.3d 279 (3d Cir. 2002) .................................................................7

*Liteky v. United States,*
  510 U.S. 540 (1994)........................................................................6, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Paul v. Davis*,
424 U.S. 693 (1976) ........................................................................ 12

*Pescatore v. Pan Am. World Airways, Inc.*,
97 F.3d 1 (2d Cir. 1996) .............................................................. 2, 18

*Pughe v. United States*,
4 Fed. App'x 65 (2d Cir. 2001) ........................................................ 7

*S.E.C. v. Razmilovic*,
728 F.3d 71 (2d Cir. 2013) .............................................................. 5

*Sadallah v. City of Utica*,
383 F.3d 34 (2d Cir. 2004) ............................................................ 12

*Scott v. Perkins*,
150 Fed. App'x 30 (2d Cir. 2005) .................................................... 7

*Securities and Exchange Commission v. Citigroup Global Markets Inc.*,
673 F.3d 158 (2d Cir. 2012) .......................................................... 16

*Spates v. Manson*,
619 F.2d 204 (2d Cir. 1980) .......................................................... 17

*Spechler v. Tobin*,
591 F. Supp. 2d 1350 (S.D. Fla. 2008) ........................................... 13

*Szafran v. Sandata Tech.*,
205 Fed. App'x 864 (2d Cir. 2006) ................................................ 18

*United States v. Amico*,
486 F.3d 764 (2d Cir. 2007) .......................................................... 22

*United States v. Cavera*,
550 F.3d 180 (2d Cir. 2008) ............................................................ 9

*United States v. Gupta*,
No. 09-4738-cr, 2011 WL 8975984 (2d Cir. Sept. 15, 2011) ............. 9

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ..................................................... 20, 22

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Microsoft Corp.*,
   56 F.3d 1448 (D.C. Cir. 1995) ................................................................18, 20

*United States v. Ming He*,
   94 F.3d 782 (2d Cir. 1996) ........................................................................6

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ....................................................................18

*United States v. Robin*,
   553 F.2d 8 (2d Cir. 1977) ........................................................................18

*United States v. Toohey*,
   448 F.3d 542 (2d Cir. 2006) ......................................................................7

*Watson v. Geren*,
   587 F.3d 156 (2d Cir. 2009) ......................................................................8

*Wray v. United Air Lines, Inc.*,
   184 Fed. App'x 120 (2d Cir. 2006) ..........................................................5

*Young v. Conway*,
   715 F.3d 79 (2d Cir. 2013) ........................................................................8

**Statutes**

28 U.S.C. § 1292(a)(1) ................................................................................17

28 U.S.C. § 1651 ..........................................................................................6

28 U.S.C. § 2106 ..........................................................................................6

**Rules**

Fed. R. App. P. 21 ..............................................................................passim

Fed. R. App. P. 35 ........................................................................1, 2, 4, 5, 8, 13

Fed. R. App. P. 40(a)(2) ..............................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Treatises**

16AA Fed. Prac. & Proc. Juris. § 3967.1 (4th ed.)..................................................22

**Other Authorities**

Amanda Frost, *Keeping Up Appearances: A Process-Oriented Approach to Judicial Recusal*, 53 U. Kan. L. Rev. 531, 567 (2005).......................................7

Pursuant to Rules 29 and 35(e) of the Federal Rules of Appellate Procedure, and at the request of the Court, Michael B. Mukasey and Rudolph W. Giuliani ("Amici") respectfully submit this memorandum, as *amici curiae*, in response to (i) Plaintiffs-Appellees' Motion for Reconsideration by the En Banc Court of the October 31, 2013 Mandate, dated November 11, 2013, filed by the plaintiffs-appellees in *Floyd v. City of New York*, No. 13-3088 ("Floyd Motion"); (ii) the Motion to Reconsider by *En Banc* Court the *Sua Sponte* Holding that District Court Judge Violated Judicial Ethics, dated November 8, 2013, filed by the plaintiffs-appellees in *Ligon, et al. v. City of New York*, No. 13-3123 ("Ligon Motion"); and (iii) the District Court's Request for Leave to File Motion to Address Order of Disqualification, dated November 6, 2013 ("District Court Submission") (collectively, the "Petitions"), which seek, among other things, *en banc* review of the Panel's corrected October 31, 2013 Mandate ("Mandate") disqualifying United States District Judge Shira A. Scheindlin from further participation in these proceedings.[1]

## PRELIMINARY STATEMENT

Contrary to the overwrought allegations contained in the Petitions, the Mandate reassigning the district court proceedings to a different judge was

---

[1] The Amici's status as *amici curiae* has already been confirmed by the Court.  *See* Dkt. No. 160.  Pursuant to Local Rule 29.1(b), the Amici hereby confirm that no party, or its counsel, has contributed money that was intended to fund the preparation or submission of Amici's brief. In addition, no non-party other than the Amici or their counsel has contributed such funds. Counsel for the parties did not author the proposed brief in whole or in part.

procedurally proper and substantively sound.  The Petitions provide no legitimate reason for review by the full Circuit.

Rule 35 of the Federal Rules of Appellate Procedure makes clear that rehearing is disfavored and will be granted only if "necessary to secure or maintain uniformity of the court's decisions" or if "the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35(a).  Here, Petitioners do not even suggest that the Mandate conflicts with a decision of the Circuit or any other court. Nor do the Petitions identify any questions of exceptional importance that would warrant *en banc* consideration.

Petitioners' assertions, without citation to any authority, that the Mandate infringed upon the District Judge's constitutional rights, are unfounded and do not, simply by *viva voce* assertion, rise to the level of exceptional importance.  Equally unavailing are appellees' speculative allegations that they "may" be prejudiced because a new judge would need time to learn the record cannot merit review by the full Court.  Moreover, as discussed below, the assorted procedural arguments raised by the Petition are misplaced and provide no basis to revisit or reconsider the removal of the District Judge.

Further, the determination of the Panel rested upon ample evidence demonstrating that the District Judge's conduct "might reasonably cause an objective observer to question [the judge's] impartiality."  *Pescatore v. Pan Am.*

2

*World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996) (internal quotation marks and citation omitted).

Indeed, Judge Scheindlin erased all doubt as to her unusual personal interest in this matter when she sought to intervene, in violation of the Rules, without the Court's order or invitation.[2]  As explained by the Tenth Circuit Court of Appeals, "[a] judge should be above the fray; he or she should not be influenced by, or appear to be caught up in or contribute to, public clamor.  When a judge becomes embroiled in a controversy, the line between the judge and the controversy before the court becomes blurred, and the judge's impartiality or appearance of impartiality may become compromised."  *In re Charge of Judicial Misconduct*, 47 F.3d 399, 400 (Jud. Council of the 10th Cir. 1995).

## ARGUMENT

### I.    There Is No Basis For *En Banc* Review Of The Mandate

The Petitions fail to provide any valid reason for the Court to consider the issue of the District Judge's disqualification *en banc*.  Indeed, not one satisfies or

---

[2] The Amici are also constrained to respond to the inappropriate letter, dated November 8, 2013, from Burt Neuborne and other "amici curiae on behalf of the District Judge herein" to the Panel, urging the Panel to withdraw without prejudice its finding that the District Judge had "run afoul" of the Code of Conduct for United States Judges.  *See* Dkt. No. 266.  The letter posits that "[s]uch a course of conduct would permit the parties to raise the issues at an appropriate point in the proceedings without being forced to address them in the context of an unseemly dispute among judges."  The temerity of this request by the "amici counsel," whose right to appear in these cases has not yet been granted, cannot be overstated.  The "amici counsel" presumptuously ask for the ultimate relief they seek by way of a procedurally improper two paragraph letter application.  And, the "unseemly dispute among judges" is principally the result of the decision by counsel and the District Judge to inject themselves into these appellate proceedings.

3

even attempts to meet the high standard for *en banc* review imposed by the Federal Rules of Appellate Procedure:  "An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance."  Fed. R. App. P. 35(a).

As Chief Judge Katzmann noted in *Ricci v. DeStefano*, the Circuit has a "longstanding tradition of general deference to panel adjudication – a tradition which holds whether or not the judges of the Court agree with the panel's disposition of the matter before it.  Throughout our history, we have proceeded to a full hearing en banc only in rare and exceptional circumstances."  530 F.3d 88, 89-90 (2d Cir. 2008) (concurring in denial of rehearing en banc).  Petitioners cannot satisfy these exacting prerequisites to *en banc* review.[3]

### A.    The Petitions Do Not Comply With The Rules Governing Applications For *En Banc* Consideration

As a preliminary matter, the Petitions should be denied because they do not comply with the Federal Rule of Appellate Procedure governing applications for rehearing *en banc*.  Every such petition:

> [M]ust begin with a statement that either: (A) the panel decision conflicts with a decision of the United States Supreme Court or of the court to which the petition is addressed (with citation to the

---

[3] To the extent the Petitions seek rehearing by the Panel, they do not satisfy Fed. R. App. P. 40(a)(2), which provides that any petition for panel rehearing must "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition."

conflicting case or cases) and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions; or (B) the proceeding involves one or more questions of exceptional importance, each of which must be concisely stated; for example, a petition may assert that a proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue.

Fed. R. Civ. P. 35(b)(1). The Petitions do not conform to this rule, or even attempt to do so, rendering each defective and subject to summary denial. *See*, *e.g.*, *Wray v. United Air Lines, Inc.*, 184 Fed. App'x 120, 121 (2d Cir. 2006) (denying petition for rehearing where "appellees did not file a proper in banc petition").

### B.    The Mandate Does Not Conflict With Supreme Court Precedent Or Prior Decisions Of This Court

Even if the Petitions had been properly submitted, there is no substantive basis for *en banc* consideration. The Petitions do not even suggest that the Mandate conflicts with Supreme Court precedent, and none of the parties seeking *en banc* review has identified a conflicting decision of this Court.

Although the Petitions contend that the Panel's *sua sponte* reassignment was "unprecedented," Floyd Motion at 1, and "troubling," District Court Submission ¶ 13, the Mandate falls squarely within the Court's power.[4] Notably, despite the

---

[4] Remarkably, at the same time that the Floyd and Ligon Motions assert that the District Judge's removal was unprecedented and should be reconsidered, they assert that the Panel should recuse itself from further proceedings. The audacity of this position is breathtaking, especially where neither the Floyd nor Ligon Motions provide any basis beyond their conclusory requests for exclusion of the Panel. It would appear, however, that the plaintiffs are simply unhappy with the Mandate, which clearly does not warrant reassignment. *See*, *e.g.*, *S.E.C. v. Razmilovic*, 728 F.3d 71, 86 (2d Cir. 2013) ("[R]ecusal is not warranted where the only challenged conduct

number of highly qualified lawyers involved in drafting the various Petitions, they collectively have been unable to identify a single decision from the Supreme Court, or from this or any other Circuit, that would compel a conclusion that the Panel was not permitted to act *sua sponte* in disqualifying the District Judge.

The absence of such authority is not surprising.  It is this Court's "task to supervise the administration of justice in the federal courts, and to that end [it] must ensure that fair standards of procedure are maintained."  *United States v. Ming He*, 94 F.3d 782, 792 (2d Cir. 1996).  "Federal appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances.'"  *Liteky v. United States*, 510 U.S. 540, 554 (1994) (quoting 28 U.S.C. § 2106); *see also* 28 U.S.C. § 1651 (the All Writs Act).

In fact, as the Floyd Motion acknowledges, the Court has the authority to reassign cases on remand pursuant to 28 U.S.C. § 2106, regardless of whether a prior request had been made by a party.  *See* Floyd Motion at 14.  So too does the District Court Submission, which recognizes that *sua sponte* reassignment "may be appropriate" in certain cases.  *See* District Court Submission ¶ 46.

Further, the Petitions ignore the various cases in this Circuit and others in

---

consists of judicial rulings . . . .") (additional modification, internal quotation marks and citation omitted).

which district judges have been reassigned on remand, regardless of whether the

issue had been raised previously by the parties. *See, e.g., Scott v. Perkins*, 150 Fed.

App'x 30, 34 (2d Cir. 2005) (reassigning case where parties had not requested that

the Court do so); *Pughe v. United States*, 4 Fed. App'x 65 (2d Cir. 2001) (finding

that "reassignment is advisable" despite no briefing on that issue by the parties);

*United States v. Toohey*, 448 F.3d 542, 546 (2d Cir. 2006) (remanding case to a

different judge where there had been no request for reassignment); *LaSalle Nat'l.*

*Bank v. First Conn. Holding Grp., LLC*, 287 F.3d 279, 292 (3d Cir. 2002)

(concluding, *sua sponte*, that "despite the reservations we always have when

reassigning a case from an excellent and dedicated jurist, we nevertheless have a

responsibility to exercise our supervisory authority and will do so in an appropriate

case").

　　To be sure, permitting appellate courts to disqualify a judge on the appellate

court's own motion constitutes a judicial recognition that litigants may be hesitant

to seek disqualification, and that when a party makes such a motion, the decision to

do so is fraught with risk, as it could draw the ire of the trial judge and serve to

exacerbate existing bias or partiality. *See*, *e.g.*, Amanda Frost, *Keeping Up*

*Appearances: A Process-Oriented Approach to Judicial Recusal*, 53 U. Kan. L.

Rev. 531, 567 (2005) ("A lawyer might reasonably hesitate to make [a recusal]

motion, fearing that it will anger the judge before whom he will have to try the

case if he loses.")

In sum, *en banc* review is not warranted on the ground that the Mandate conflicts with Supreme Court or Second Circuit precedent.

### C.    <u>There Are No Questions Of Exceptional Importance</u>

The Petitions also fail to identify a single "question of exceptional importance." Fed. R. App. P. 35(a)(2). It is well settled that "[*e*]*n banc* review should be limited generally to only those cases that raise issues of important systemic consequences for the development of the law and the administration of justice." *Watson v. Geren*, 587 F.3d 156, 160 (2d Cir. 2009) (per curium); *see also Young v. Conway*, 715 F.3d 79, 80 (2d Cir. 2013) (Barrington, J, concurring).

Cases in which the Court has granted rehearing *en banc* illustrate the types of matters raising exceptional circumstances warranting the full Court's attention, and illuminate why it is not appropriate or necessary here. *See*, *e.g.*, *Hilbert v. Dooling*, 476 F.2d 355 (2d Cir. 1973) (granting rehearing *en banc* relating to whether dismissal of a criminal charge pursuant to court rule requiring prompt disposition of criminal cases is with prejudice and thus precludes re-indictment); *Evans v. Lynn*, 537 F.2d 571 (2d Cir. 1975) (granting rehearing *en banc* where a Supreme Court decision changed the law regarding standing to bring civil rights action); *Bellamy v. Cogdell*, 974 F.2d 302 (2d Cir. 1992) (granting rehearing *en banc* in case concerning denial of right to counsel under the Sixth Amendment);

8

*Asherman v. Meachum*, 957 F.2d 978 (2d Cir. 1992) (consideration *en banc* deemed appropriate regarding issue of whether prison officials violated Fifth Amendment rights by terminating supervised release where defendant refused to answer questions about his crime at a psychiatric evaluation); *Hayden v. Pataki*, 449 F.3d 305 (2d Cir. 2006) (granting rehearing in case involving claims of violations of the Voting Rights Act based on allegations that a state statute disenfranchised incarcerated felons and parolees); *United States v. Cavera*, 550 F.3d 180, 186-87 (2d Cir. 2008) (granting rehearing in case with issues relating to application of sentencing guidelines); *United States v. Gupta*, No. 09-4738-cr, 2011 WL 8975984, at *1 (2d Cir. Sept. 15, 2011) (granting rehearing *en banc* to consider issues related to exclusion of public from courtroom).

On the other hand, matters such as the recusal of a district judge present exactly the type of case-specific and non-systemic issue that is not appropriate for *en banc* consideration.  For example, in *In re Drexel Burnham Lambert Inc.*, 869 F.2d 116, 118 (2d Cir. 1989), the Court denied *en banc* reconsideration, observing that "[i]n suggesting in banc review in this case, petitioners have neither demonstrated a lack of uniformity in our decisions relating to recusal of district court judges nor identified a legal question of transcending importance."

The Floyd Motion's argument that "Plaintiffs *may* suffer prejudice from reassignment," Floyd Motion at 2 (emphasis added), and that the "undue waste of

9

judicial resources and *potential* prejudice to Plaintiffs from a reassignment – after almost six years of litigation, a nine week trial, and a finding of liability, and before the remedies have been developed or so-ordered – is tremendous," Floyd Motion at 15-16 (emphasis added), is speculative and unfounded, and does not generate an issue of exceptional importance.  Even plaintiffs do not claim actual prejudice, only that prejudice may result, and they offer no reason other than that a new judge "might never achieve the same familiarity with the facts," and "will undoubtedly require significant time to learn the extensive and complex factual record." *Id*. at 16.  The *Floyd* plaintiffs' claim of waste of judicial resources and delay cannot possibly outweigh what necessarily would be a finding that the defendants were prejudiced by the District Judge's partiality.

Accordingly, the reassignment upon remand, even *sua sponte*, does not present any questions of exceptional importance warranting the full Court's attention.[5]

### D.    The Suggestion That The District Judge's Constitutional Rights Were Violated Does Not Present A Matter Of Exceptional Importance

There is no merit to the argument, alluded to but never properly presented, that *en banc* review is necessary due to the presence of important constitutional

---

[5] The fact that the underlying litigation has received significant public attention provides no reason to grant *en banc* review.  Nor should the outcome of the Petitions be influenced by media attention garnered by the Mandate.  The Floyd Motion's attempt to sway the Court by citation to articles criticizing the Mandate, and by claiming that the Mandate has "left the public to speculate about the basis for removal," is inappropriate and irrelevant.  *See* Floyd Motion at 15-16.

issues.  Although the District Court Submission states baldly that it is "brought pursuant to . . . the First and Fifth Amendments to the Constitution of the United States," District Court Submission at 2, not a single case is cited to support the proposition that either constitutional provision has been violated.  The absence of well-founded constitutional claims is confirmed by a close reading of the submission itself, in which counsel for Judge Scheindlin asserts that the Mandate, and the Panel's "failure to . . . provide[] the District Judge with notice and an opportunity to defend herself . . . is an affront *to the values* underlying the Fifth Amendment's guaranty of procedural due process of law."  District Court Submission ¶ 25 (emphasis added).  Similarly, with respect to the First Amendment, the District Court Submission asserts that "[d]iscussion of important legal issues by members of the judiciary . . . is consistent with *the values underlying* the First Amendment."  District Court Submission ¶ 43 (emphasis added); *see also id*. at ¶ 44 ("Given our First Amendment tradition . . . .").

By repeated resort to studiously imprecise and carefully selected language, the District Court Submission all but concedes, as it must under well-settled law, that there are no actual First or Fifth Amendment issues at stake.

Similarly, the Petitions filed by *Floyd* and *Ligon* repeatedly state that the District Judge and the parties were not given notice and an opportunity to be heard.  *See*, *e.g.*, Floyd Motion at 2; Ligon Motion ¶ 2.  However, once again, they do not

11

cite a single case to support the claimed entitlement.  Further, Petitioners fail to recognize that the District Judge is not properly a party to these proceedings, and thus has no general right to notice and an opportunity to be heard.[6]  As for litigants, the Petitioners fail to explain what due process rights are implicated by the removal of a district judge, and ignore that a neutral and impartial arbiter ensures due process rights for all.

### E. There Are No Legitimate Constitutional Concerns

The only possible interest in "life, liberty or property," U.S. Const. amend. V, that could be claimed by the District Judge under the Fifth Amendment is reputational injury.  However, "[i]t is well established that damage to one's reputation is not 'by itself sufficient to invoke the procedural protection of the Due Process Clause.'"  *Dingle v. City of New York*, 728 F. Supp. 2d 332, 345 (S.D.N.Y. 2010) (Scheindlin, J.) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation, however, is an issue of state law, not of federal constitutional law . . . .").[7]

---

[6] Of course, if an actual disciplinary proceeding were commenced against Judge Scheindlin, for example under the auspices of the Judicial Council of the Second Circuit, the applicable rules would provide for notice and an opportunity to rebut any allegations of misconduct.  *See generally* Rules for Judicial-Conduct and Judicial-Disability Proceedings.

[7] In order to make out a proper Due Process claim, a plaintiff must satisfy the "stigma plus" test derived from the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976).  The District Judge cannot do so here.  *See Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001) (observing that to be actionable under federal law, a plaintiff "must show (1) the utterance of a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden or alteration of his or her status or of a right in

The District Court Submission does not and cannot contend that, by reassigning this case to a different judge, the Panel denied the District Judge any legal right or status. *See, e.g.*, *Spechler v. Tobin*, 591 F. Supp. 2d 1350, 1360-61 (S.D. Fla. 2008) (dismissing state judge's due process claim where judge had been reassigned to civil traffic and parking ticket docket) *aff'd*, 327 Fed. App'x 870 (11th Cir. 2009). This is the beginning and the end of the analysis, and defeats the District Judge's only possible Fifth Amendment claim.

Nor, as the District Court Submission implicitly recognizes, does the Mandate implicate the District Judge's First Amendment rights to free speech. The District Judge's right to speak is irrelevant to whether, as a result of what she said, an "objective observer would entertain reasonable questions about the judge's impartiality." *Liteky*, 510 U.S. at 564.

*              *              *

In sum, the Petitions should be denied because they present no basis for rehearing *en banc*, having failed to identify either a single conflict with existing jurisprudence or a matter of exceptional importance as required pursuant to Rule 35. Under such circumstances, regardless of whether other members of the Court agree with the Panel's determination, the full Court's attention is not warranted and the Mandate should stand. *See Ricci*, 530 F.3d at 89 (recognizing that denial of

---

addition to the stigmatizing statement") (rev'd on other grounds).

petition for rehearing *en banc* is "consistent with our Circuit's longstanding tradition of general deference to panel adjudication – a tradition which holds whether or not the judges of the Court agree with the panel's disposition of the matter before it").

## II.    The Mandate Was Not Procedurally Deficient

The Petitions raise various procedural arguments purporting to require that the Mandate be vacated.  For example, the District Court Submission asserts that the District Judge should have been afforded an opportunity to be heard pursuant Fed. R. Civ. P. 21.  *See* District Court Submission ¶¶ 14-25.  The Floyd Motion, meanwhile, argues that the Panel lacked appellate jurisdiction, and thus was without the power to direct reassignment.  *See* Floyd Motion at 7-9.  These arguments are without merit.

### A.    Rule 21 Does Not Apply And Does Not Confer A Right To Be Heard

The District Court Submission argues that, pursuant Rule 21 of the Federal Rules of Appellate Procedure, the Panel should have afforded the District Judge an opportunity to be heard prior to reassigning the case on remand.  This argument fails for several reasons, and the inability of the District Court Submission to offer any authority that is even remotely relevant is telling.

Fundamentally, Rule 21, which governs writs of mandamus, does not apply to these circumstances because it contemplates a proceeding commenced by "a

petition with the circuit clerk with proof of service on all parties to the proceeding in the trial court." Fed. R. App. P. 21. Simply put, this is not a mandamus proceeding commenced by a party, and the District Judge's reliance upon the procedures governing such proceedings is misplaced in the first instance.

If Rule 21 were to apply, by implication or otherwise, the District Judge's contention that it is commonplace for judges to participate in mandamus proceedings involving reassignment is simply incorrect. *See* District Court Submission ¶ 19. In fact, Rule 21 was amended in 1996 for the purpose of reducing a district court's direct involvement in mandamus proceedings, such that the judge would no longer be treated as a respondent, "[i]n order to change the tone of the rule and of mandamus proceedings generally . . . ." *See* Fed. R. App. P. 21 advisory committee note (1996). In the same year, the rule was also amended to provide that "although the judge may request permission to respond [to a mandamus petition], *the judge may not do so unless the court invites or orders a response*." *Id* (emphasis added).

Thus, Rule 21(b)(4) in its current form – which the District Court Submission relies upon but does not bother to quote – provides that the "court of appeals may invite or order the trial-court judge to address the petition or may invite an amicus curiae to do so. The trial-court judge may request permission to address the petition *but may not do so unless invited or ordered to do so by the*

*court of appeals*." (emphasis added). Despite the assertion that district judges routinely participate in mandamus litigation, the plain language of the rule confirms the opposite.[8]

Further, the cases cited in the District Court Submission, purporting to support the notion that the District Judge should have been given an opportunity to be heard under Rule 21, do no such thing. Rather, *In re German and Austrian Holocaust Litigation*, 250 F.3d 156 (2d Cir. 2001), and *Securities and Exchange Commission v. Citigroup Global Markets Inc.*, 673 F.3d 158 (2d Cir. 2012), were both cases where the parties jointly sought mandamus relief requiring the district court to take action. Because both sides to the litigation were in agreement with respect to the mandamus proceedings, the only way for the Court of Appeals to obtain the benefit of counterargument was to invite or allow the district court submission under Fed. R. App. P. 21(b)(4). *See* 250 F.3d at 160 (observing that "this Court invited the district court to respond" where both plaintiffs and defendants sought mandamus relief "requiring the district court to grant forthwith the plaintiffs' motions for voluntary dismissal");[9] 673 F.3d at 161 ("In order to ensure that the panel which determines the merits receives briefing on both sides,

---

[8] As discussed more fully below, the District Court's submission of a substantive response, without first being invited by the Court of Appeals, or seeking its permission, is wholly improper and provides an alternative basis for disqualification.

[9] Remarkably, the District Court's counsel, Mr. Neuborne, represented plaintiffs in the Holocaust litigation and is presumably well aware of the fact that the Court's decision to allow Judge Kram to submit a response has no bearing on the present circumstances.

16

counsel will be appointed to argue in support of the district court's position.").

### B.   The Panel Had Appellate Jurisdiction To Issue The Mandate

Similarly without merit is the argument, made in the Floyd Motion, that the Court was without appellate jurisdiction to issue the Mandate.  As argued by the City in the Memorandum of Law in Opposition to the Motion to Dismiss the Appeal, dated October 7, 2013, Dkt. No. 143, the remedies order issued by the District Court is an appealable order under 28 U.S.C. § 1292(a)(1).  Despite the *Floyd* plaintiffs' characterization of the remedies order as requiring "nothing more" of the City than to develop a plan, *see* Floyd Motion at 8, it goes much further.  The "content of the plan to be submitted has already been substantially prescribed by the district court."  *Spates v. Manson*, 619 F.2d 204, 209 (2d Cir. 1980).  Under these circumstances, the order is appealable.  *Id*.

Moreover, the *Floyd* plaintiffs filed a motion to dismiss this appeal, raising the same arguments, before the Mandate was issued.  In issuing the Mandate, the Panel effectively rejected the argument and asserted jurisdiction.  The Floyd Motion offers no basis to revisit that determination.[10]

---

[10] Equally meritless is the argument, raised in the Floyd Motion, that the Panel "effectively" had no authority to disqualify the District Court because "[a]t the time the panel issued its order removing Judge Scheindlin from this case, the City had no right to seek disqualification."  Floyd Motion at 9.  This is nothing more than another species of the unsupported contentions, discussed above, that it was improper for the Court to reassign this case *sua sponte*.

17

**III.    The Decision To Reassign These Cases Was Substantively Sound**

The Panel properly concluded that these matters should be assigned to a new district judge upon remand.  The Mandate was appropriate under the circumstances when it was issued on October 31, 2013, and is even more so now, where the District Judge has improperly injected herself into these proceedings.

"To reassign a case on remand, 'we need not find actual bias or prejudice, but only that the facts 'might reasonably cause an objective observer to question [the judge's] impartiality.'"  *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995)) (modification in original).  "Yet we may also remand to another judge absent such proof of partiality where 'reassignment is advisable to preserve the appearance of justice.'"  *United States v. Quattrone*, 441 F.3d 153, 192 (2d Cir. 2006) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)); *see Szafran v. Sandata Tech.*, 205 Fed. App'x 864, 869 (2d Cir. 2006) ("While we do not doubt the District Court's impartiality, we nevertheless believe that reassignment is advisable, 'both for the judge's sake and the appearance of justice . . . .'") (quoting *Robin*, 553 F.3d at 10).

**A.    The Panel Had A Sufficient Basis To Order Reassignment**

There was ample evidence available to the Panel that the District Judge's "appearance of impartiality surrounding this litigation was compromised by the . . .

18

improper application of the Court's 'related case rule.'"  Mandate at 2.  Among

other things, there is no serious dispute that the District Judge abused Local Rule

13 when she accepted a case as related even where the original case was no longer

pending.  *See* Local Rule 13(c)(ii) ("A case designated as related shall be

forwarded to the judge before whom *the earlier-filed case is then pending* who was

the sole discretion to accept or reject the case.") (emphasis added).

And, despite the Petitions' various assertions that the transcript in *Daniels v.*

*City of New York*, No. 99 Civ. 1695, does not reveal a need for reassignment, the

colloquy plainly casts a shadow on the District Judge's impartiality.  Indeed, if, as

the Petitions suggest, the discussion of Local Rule 13 was merely "in response to

efforts by plaintiffs' counsel in *Daniels* to raise newly discovered evidence,"

District Court Submission ¶ 31, or was for the purpose of noting "proper

procedures for plaintiffs to follow," Floyd Motion at 12, the District Judge need

not have gone any further than that.  But the District Judge went much further –

inviting, encouraging and even advising on a new lawsuit that was to be directed

specifically to her.  *See* District Court Submission, Ex. 4 at 10:25-11:1

(encouraging plaintiffs to "bring a lawsuit" and to "mark it related"); 11:10-13

(informing plaintiffs that "[i]f one had only your letter, it would look like you have

a lawsuit"); 14:19-21 ("[W]hat I'm trying to say – I am sure I am going to get in

trouble for it – for $65 you can bring that lawsuit."); 14:24-15:2 (explaining the

basis for the contemplated lawsuit as "[t]he city violates its own written policy . . . here is the proof of it, please give use the remedy.  Injunction or damages. . . .").[11]

The newspaper and magazine articles, reporting interviews given by Judge Scheindlin during the *Floyd* trial, also support reassignment.  *See* Larry Neumeister, *NY 'Frisk' Judge Calls Criticism 'Below-the-Belt'*, The Associated Press, May 19, 2013 (Judge Scheindlin quoted as describing mayor's office report as a "below-the-belt attack," "disgraceful," and "very discouraging and upsetting.  I can't say it has no toll" and "It's very painful.  Judges can't really easily defend themselves.");  Jeffrey Toobin, *A Judge Takes on Stop-and-Frisk*, The New Yorker, May 27, 2013 ("I'm not afraid to rule against the government.").  While the Petitions quibble about whether these statements, when viewed in isolation, provide a basis for disqualification, they ignore that "the specifics of particular conversations are less important than their cumulative effect."  *United States v. Microsoft Corp.*, 253 F.3d 34, 109 (D.C. Cir. 2001).[12]

Taken together, even some of these facts would "cause an objective

---

[11] Contrary to the *Floyd* plaintiffs' claim that the Mandate "threatens to transform routine, discretionary decisions into a basis for judicial disqualification," Floyd Motion at 13, it will more likely have the effect of causing the related case rule to be properly and fairly applied.  *See* Memorandum in Support of City of New York's Motion for Modification of the Stay Order dated October 31, 2013 to the Extent of Vacating the District Court's Orders Dated August 12, 2013 at 7-8.

[12] The Floyd Motion misleadingly suggests in a parenthetical that the court in *Microsoft* did not disqualify the trial judge.  *See* Floyd Motion at 16.  In fact, the judge in Microsoft was disqualified for, among other things, statements made to the media, even though the court concluded that "*full retroactive* disqualification is unnecessary."  *Microsoft*, 253 F.3d at 116 (emphasis added).

observer" to question the District Judge's impartiality or, at the very least, compel

reassignment "to preserve the appearance of justice."

### B.     The District Court Submission Provides
####        <u>Further Ground For Reassignment</u>

The appropriateness of the District Judge's disqualification has been further

substantiated by the District Court Submission.[13]

As discussed above, and setting aside the fact that Rule 21 does not apply, a

district court may not address a mandamus petition unless invited to do so by the

Court of Appeals.  *See* Fed. R. App. P. 21(b)(4).  Alternatively, the judge may seek

permission from the Court of Appeals to address the petition.  *See id.*; *see also* Fed.

R. App. P. 21 advisory committee notes (1996) (observing that the current version

of Rule 21(b)(4) was made in recognition of the fact "that it is ordinarily

undesirable to place the trial court judge, even temporarily, in an adversarial

posture with a litigant").

In this case, the District Judge was not invited by the Court of Appeals to

address the Mandate.  Nor did the District Judge properly seek permission from the

Court before submitting a substantive response.[14]  These circumstances confirm the

---

[13] The need for disqualification is also underscored by a statement issued by the District Judge addressing the Mandate and defending her position, which further evidences the fact that Judge Scheindlin has become personally embroiled in these proceedings.  *See* Mark Hamblett, *Circuit Rebuffs Scheindlin on Stop/Frisk*, N.Y.L.J., November 1, 2013.

[14] There is no basis for the anticipated argument by counsel for the District Court that it sought permission by stating, in the preamble to the District Court Submission, that "Counsel seek leave in the nature of an order under Rule 21(b)(4) . . . authorizing counsel to appear on

finding that the District Judge no longer appears impartial, as was the case in

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007). In that case, the district court

submitted a response to a petition for mandamus "without . . . an invitation or

order." *Id*. at 776. The Court found that the judge "violated the Rule and

unnecessarily injected the district court in to the appellate process," and used that

conduct as further basis to find the appearance of partiality.[15] *Id*; *see also* 16AA

Fed. Prac. & Proc. Juris. § 3967.1 (4th ed.) ("[I]f the trial-court judge makes an

uninvited response to a petition without obtaining the court of appeals' permission,

that in itself may sometimes be a factor that contributes to a conclusion that the

trial-court judge's impartiality could reasonably be questioned."). The same

conclusion is warranted here. *See In re Charge of Judicial Misconduct*, 47 F.3d at

400 ("When a judge becomes embroiled in a controversy, the line between the

judge and the controversy before the court becomes blurred, and the judge's

impartiality or appearance of impartiality may become compromised."); *Microsoft*,

---

behalf of the District Judge in order to address the factual and legal sufficiency of the Motion Panel's *sua sponte* order of removal." The request for permission is followed by 35 paragraphs discussing the merits of the reassignment. If all that was required under Rule 21(b)(4) was a formulaic statement requesting permission before "addressing the petition," the limitations of Rule 21(b)(4) would be rendered meaningless. Nor can Mr. Neuborne skirt the prerequisites of Rule 21(b)(4) by claiming that the District Court Submission is asking permission to address the Mandate only on behalf of *amicus curiae*, as Mr. Neuborne is clearly purporting to represent the District Judge. In any event, Rule 21(b)(4) does not contain any mechanism by which amicus may request permission to respond to a mandamus petition; only the district judge may do so.

[15] The fact that the plaintiffs in *Floyd* and *Ligon* are advocating for reinstatement should also raise serious questions as to the District Court's impartiality, as it reveals their belief that success on the merits of their claims depends largely upon the presence of Judge Scheindlin as the presiding judge.

22

253 F.3d at 115 ("Judge Learned Hand spoke of 'this America of ours where the passion for publicity is a disease, and where swarms of foolish, tawdry moths dash with rapture into its consuming fire . . . .' Judges are obligated to resist this passion.") (quoting Learned Hand, *The Spirit of Liberty* 132–33 (2d ed. 1953)).

## <u>CONCLUSION</u>

For all the reasons set forth above, the Amici respectfully request that the Court deny the Petitions, including any requests for reconsideration or rehearing *en banc*, and grant such further relief as the Court deems just and proper.

Dated:  November 13, 2013
      New York, New York

<div style="margin-left:40%">

Respectfully submitted,

    /s/ Daniel S. Connolly
Daniel S. Connolly, Esq.
Rachel B. Goldman, Esq.
BRACEWELL & GIULIANI LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (212) 508-6101
Email: daniel.connolly@bgllp.com
Email: rachel.goldman@bgllp.com

*Counsel for Amici Curiae Michael B. Mukasey and Rudolph W. Giuliani*

</div>

#4407864