# 13-3088

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DAVID FLOYD, et al.,

Plaintiffs-Appellees,

-v.-

THE CITY OF NEW YORK,

Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' AND DISTRICT JUDGE'S MOTIONS FOR
EN BANC RECONSIDERATION**

MICHAEL A. CARDOZO,
Corporation Counsel of the
  City of New York,
Attorney for Defendant-Appellant,
100 Church Street,
New York, New York 10007.
(212) 356-2300

Defendant-Appellant City of New York ("the City") respectfully submits this memorandum in response to the *Floyd* and *Ligon* plaintiffs' motions for reconsideration *en banc* of the Court's Corrected Mandate (the "Reconsideration Motions"), and to the request by Burt Neuborne, Esq., *et al.*, to appear on behalf of the Honorable Shira A. Scheindlin, U.S.D.J., to address issues raised by the Corrected Mandate (the "District Judge Motion"). Collectively, these motions seek to vacate the panel's reassignment of the *Floyd* and *Ligon* cases to a randomly-selected district judge, and/or to have the stay and reassignment reviewed by the full Court, without any suggestion whatsoever of why *en banc* review is warranted. The Reconsideration Motions even go so far as to demand that a different three-judge panel be assigned to review the Corrected Mandate.

The panel properly and unanimously concluded that the District Court's Liability and Remedial Orders in *Floyd* and *Ligon* should be stayed, and that reassignment was necessary to preserve the integrity of the proceedings. As set forth below, nothing in these Motions warrants the extraordinary relief requested. Accordingly, they should be summarily denied.

I.    Plaintiffs Identify No Basis for *En Banc* Review

At the threshold, to the extent the Reconsideration Motions request *en banc* review, they are defective because plaintiffs identify no basis for *en banc* review. Although stay motions have occasionally been reviewed *en banc* in other circuits,

*e.g., Ohio Republican Party v. Brunner*, 544 F.3d 711, 712 (6th Cir. 2008);

*Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 90 (3d Cir. 1979),

plaintiffs must show that the panel decision conflicts with binding precedent, or

identify one or more "questions of exceptional importance" warranting full court

review. *See* Fed. R. App. P. 35(b). That they have not done so requires denial.

*See, e.g., Landell v. Sorrell*, 406 F.3d 159, 165-66 (2d Cir. 2005) (concurring)

("[M]ere substantive disagreement with a panel decision is not … sufficient reason

for an in banc rehearing.") (citations and footnotes omitted); *Gilliard v. Oswald*,

557 F.2d 359, 359 (2d Cir. 1977) (concurring) (a judge should not vote for

reconsideration merely because he disagrees with the result reached by the panel;

"Rule 35 was not adopted to provide that luxury.").

Certainly, the mere fact that a panel raises an issue *sua sponte* or takes

judicial notice of public proceedings and media statements is not enough to

warrant *en banc* review, as the *Floyd* and *Ligon* plaintiffs suggest (Floyd at 17;

Ligon at 2). The panel appropriately raised very serious concerns about the

fairness and impartiality, and the appearance of fairness and impartiality, of the

proceedings below, as it was entitled to do as the reviewing Court. There is

absolutely no basis to question the panel's fairness and integrity. The panel did not

create any appearance of impropriety or "damage the appearance of justice" (Floyd

at 15);  it did no more than rule soundly on issues properly before it.  Accordingly,

the requests for *en banc* review should be denied.

Further, plaintiffs' unprecedented demands that a different three-judge panel

review the Corrected Mandate, and hear the merits of the appeal, should be flatly

rebuffed.  Notably, plaintiffs fail to identify any procedural vehicle for this novel

request, and indeed there is none.  That aside, a single adverse ruling hardly

suffices to cast aspersions on the integrity of three distinguished and randomly-

assigned appellate judges.  Nor does it call for reassignment to a panel more to

plaintiffs' liking.

II.    Plaintiffs' Requests for Reconsideration and The District Judge's Request to
       be Heard Should Be Denied on Procedural and Substantive Grounds

The only damage to the appearance of justice here was caused by the District

Judge, who, as the panel concluded, (1) "improper[ly] appli[ed] . . . the Court's

'related case rule'" in accepting *Floyd* as related to *Daniels*, after inviting the

*Floyd* plaintiffs to mark *Floyd* as related to *Daniels*, and (2) compounded the

problem by participating in "a series of media interviews and public statements

purporting to respond publicly to criticism of the District Court."  Corrected

Mandate at 2-3.  These findings were fully supported by the record before the

panel,[1] and the events since the Corrected Mandate issued only confirm the correctness of the panel's ruling.

First, the District Judge's uninvited effort to intervene in the appellate proceedings itself raises the specter of partiality, particularly where the District Judge has no inherent right to be heard nor any right to remain on the *Floyd* and *Ligon* cases.[2]  Second, the excuses now being offered for accepting *Floyd* as related to *Daniels* are belied by the record and make no sense.  Indeed, they make it even more obvious that *Floyd* should never have ended up on Judge Scheindlin's docket.  The *Floyd* plaintiffs' effort to keep the case before Judge Scheindlin – like their and other plaintiffs' counsel's incessant judge-shopping over the years to get their cases before this District Judge – further contributes to the appearance of partiality.  Finally, the District Judge's and *Floyd* plaintiffs' *post hoc* justifications for the media interviews fare no better, and indeed confirm that those interviews could fairly be viewed by a disinterested, reasonable observer, to pertain to the stop-and-frisk cases then pending before the District Judge, despite her disclaimers.  In short, the plaintiffs' and the District Judge's efforts to undo the Corrected Mandate should be rejected.

---

[1]  During oral argument on the City's stay motion, plaintiffs did not demur when Judge Cabranes stated that the Court could properly take judicial notice of the transcript of proceedings in Daniels v. City of New York, a publicly available document.  *See Singh v. United States Dep't of Homeland Sec*., 526 F.3d 72, 80 n.9 (2d Cir. 2008).

[2] The District Judge is still assigned to *Davis v. City of New York*, 10 Civ. 699, the other case marked related to *Floyd*, over the City's objection.  The City has asked Judge Scheindlin to recuse herself from *Davis*, but the District Judge has not yet acted on the City's request.

A.   The District Judge Has No Inherent Right to be Heard or to be Assigned to the *Floyd* and *Ligon* Cases

Citing Fed. R. App. P. 21, the District Judge insists that she should have been given notice and an opportunity to be heard before the panel issued its Corrected Mandate.  By its terms, however, Rule 21, only applies where a "party" petitions for mandamus. It does not apply to action taken by the panel *sua sponte*.

Moreover, despite the District Judge's intimation, mandamus proceedings are not the exclusive procedural vehicle for hearing recusal motions on appeal. Bias may be raised on direct appeal.  *See United States v. City of New York,* 717 F.3d 72, 99-100 (2d Cir. 2013) (granting reassignment to new judge, on direct appeal, to avoid appearance of partiality);[3] *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (reviewing recusal argument raised for the first time on appeal for plain error); *United States v. Amico*, 486 F.3d 764, 777-78 (2d Cir. 2007) (vacating judgment on appeal due to judge's appearance of partiality, after denying mandamus petition on same grounds).  When such an argument is made on appeal, the procedures of Rule 21 do not apply, so the district judge may not seek to be heard.  The same is true where, as here, the Court of Appeals acts *sua sponte*, which it plainly may do "if the errors are obvious, or if they otherwise seriously

---

[3]   Although this Court's decision in *U.S. v. City of New York* does not discuss the issue of preservation of a bias claim, the City's claim of bias and the need for reassignment upon remand were both raised for the first time on appeal.

affect the fairness, integrity or public reputation of judicial proceedings." *Silber v. United States*, 370 U.S. 717, 718 (1962) (internal quotations omitted).

More importantly, by citing Rule 21, the District Judge in effect reduces the panel to a party in the proceedings. It is not. The panel is a Court of Appeals, with the full power and obligation to review district court proceedings and to protect the fairness and integrity of those proceedings. The District Judge's attempt to cast this Court as a "party" is a serious misapprehension of the nature of appellate review.

Not only does the District Judge confuse the various roles of trial judges, appellate courts, and litigators, she also adds to appearance of impropriety by injecting herself into these proceedings uninvited. Even a judge who is the subject of a mandamus petition has no right to be heard, but may only seek permission to be heard. *See* Rule 21(b)(4) ("The trial-court judge may request permission to address the petition but may not do so unless invited or ordered to do so by the court of appeals."). Nor does Rule 21 create any expectation that such permission will be forthcoming before mandamus is granted. *Compare* Rule 40(3) ("Unless the court requests, no answer to a petition for panel rehearing is permitted. But ordinarily rehearing will not be granted in the absence of such a request.")

Although the District Judge here nominally seeks permission to be heard, she does so only after issuing a very public response to the panel's ruling,[4] making it "difficult to resist the suggestion" that she has "exhibited a personal interest in the outcome of this litigation." *Alexander v. Primerica Holdings*, 10 F.3d 155, 165 (3d Cir. 1993). Nor did she stop there. Her motion includes a full-fledged attack on the Corrected Mandate, complete with criticisms of this Court's legal rulings, factual conclusions, and "collegiality." To borrow her own words, it is the District Judge's effort to intervene in the proceedings that threatens to turn this proceeding into "an unseemly dispute among judges" (*Floyd* ECF #266).

A similar sequence of events in *Amico*, 486 F.3d at 776, helped convince this Court that the appearance of partiality had been compromised. In that case, the Court vacated the judgment on appeal because the district judge wrongfully refused to recuse himself pursuant to 28 U.S.C. § 455. Earlier in the proceedings, the defendant had filed a mandamus petition, and the district judge had submitted a response to the petition, uninvited. The Court concluded that the district judge's response contributed to the appearance of impropriety, requiring reversal (*id.*):

> Federal Rule of Appellate Procedure 21(b)(4) permits a district court, whose decision is the subject of a petition for a writ of mandamus to the court of appeals, to request to be invited to respond. But the Rule makes clear that it "may not do so unless invited or ordered to do so by the court of appeals." Fed. R. App. P. 21(b)(4). In this case, it

---

[4] Mark Hamblett, New York Law Journal, *Circuit Rebuffs Scheindlin on Stop/Frisk*, November 1, 2013.

would have appeared to the disinterested observer that the judge's response to the defendants' petition for mandamus - which was made through his law clerk without such an invitation or order - violated the Rule and unnecessarily injected the district court into the appellate process. In isolation, each of these decisions might have been reasonable or defensible. Casting no aspersions on the district judge, we believe that, in the aggregate, they would lead a disinterested observer to conclude that the appearance of partiality existed.

Also of concern is the District Judge's reliance on the First and Fifth Amendments to claim a personal interest in these proceedings. First, judges simply do not have the same First Amendment rights as members of the general public. Indeed:

> an inherent aspect of a judge's position when the oath of judicial office is taken, is that the judge will be seen and heard only through his or her opinions. To the extent that this limitation may be deemed to relegate a judge to the status of second-class citizen (insofar as expression in other fora is concerned), it is a self-imposed restriction that necessarily comes with the office…. [And] [w]hen the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced.

*Primerica*, 10 F.3d at 166. Here, the District Judge, the sole trier of fact in *Floyd* and *Ligon,* failed to heed that "need to preserve the appearance of impartiality." Further, her public comments in response to the Corrected Mandate are all the more troubling because they immediately followed this Court's finding that her earlier, similar conduct violated the Canons. [5]

---

[5] The District Judge continues to pursue her cause in the media. *See* http://blogs.wsj.com/law/2013/11/12/a-puzzling-statement-from-judge-scheindlin/ (last visited November 13, 2013).

Finally, the District Judge's basis for invoking the Fifth Amendment is unclear, but it necessarily implies that she has a protected interest in her reputation or in remaining on the cases. Neither interest is cognizable under the Fifth Amendment. *Rapp v. Van Dusen*, 350 F.2d 806, 814 (3d Cir. 1965) (district court judge being reassigned "has no vested right to sit in this case"); *see Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003); *Paul v. Davis*, 424 U.S. 693 (1976); *Joelson v. United States*, 86 F.3d 1413, 1415-16, 1421 (6th Cir. 1996). The assertion of such a personal stake in these proceedings further adds to the appearance of partiality.

> ### B.     There Is No Reason for the Panel to Reconsider the Corrected Mandate.

Even if the District Judge had a right to be heard, she has now set forth her position and it provides no basis for changing the Corrected Mandate. The record upon which the panel relied speaks for itself, and nothing the District Judge has said or could say about that record undermines the panel's ruling. By the same token, nothing the *Floyd* or *Ligon* plaintiffs have said, or could say, alleviates the problems the panel identified. Corrected Mandate at 2-3. Indeed, as noted, the appearance of partiality has only been exacerbated by the District Court's actions since the Corrected Mandate issued.

At the outset, it is worth noting that nothing the panel did was improper, plaintiffs' allegations notwithstanding. The panel properly took judicial notice of

the *Daniels* court transcript and the media interviews, all of which were matters of public record; notably, there is no allegation that the District Judge was misquoted in the press.   Moreover, nothing bars a panel from acting *sua sponte* to correct what it correctly, and unanimously, views as an affront to "the interest, and appearance, of fair and impartial administration of justice."  Corrected Mandate at 3; District Judge Motion at p. 14, ¶46 (recognizing that *sua sponte* removal of district judge may be appropriate in egregious cases "where the parties are unable to raise the issue freely").[6]

     While the District Judge thus recognizes that this Court may *sua sponte* remove a district judge in an appropriate case, the *Floyd* plaintiffs insist that the panel should not have reassigned the *Floyd* and *Ligon* cases because the City waived its right to object to the District Judge's partiality (Floyd at 4-5, 10-11). The *Floyd* plaintiffs are incorrect.  This Court reviews recusal arguments raised for the first time on appeal for plain error, *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008), and federal appellate courts have the power to raise an issue *sua sponte* if they believe – as this Court rightfully did – that the issue has "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."

---

[6]  Indeed, *sua sponte* review may be particularly appropriate here, since, as the Panel recognized during oral argument, an institutional attorney who frequently appears in federal court may be justifiably reluctant to seek recusal before the trial judge, in the fear of angering the judge and exacerbating the prejudice to her client.  *See Examining the State of Judicial Recusals after Caperton v. A.T. Massey, Hearings before the Subcommittee on Courts and Competition Policy, 111 Cong. (2009),* Written Testimony of Richard E. Flamm, at 47.

- 10 -

*Silber*, 370 U.S. at 718; *Newport v. Fact Concerts*, 453 U.S. 247, 257 n. 15 (1981); *Washington v. Davis*, 426 U.S. 229, 238 (1976).

Further, this Court's authority to reassign a case "rests not on the recusal statutes alone, but on the appellate courts' statutory power to 'require such further proceedings to be had as may be just under the circumstances.'" *Liteky v. United States*, 510 U.S. 540, 554 (1994), citing 28 U.S.C § 2106. The authority conferred by §2106 is not circumscribed by the requests of a party; the appellate Court may "go beyond the particular relief sought." *Burks v. United States*, 437 U.S. 1, 17-18 (1978). And while the City admittedly did not raise its concerns about the District Judge's partiality in its stay motion, the City has frequently objected to cases being marked related to other cases, either pending or closed, before the District Judge, all to no avail.

Regardless, it is now apparent, based on the record before the Court at the time of the oral argument and since, that the District Judge's actions compromised both "the interest, and appearance, of fair and impartial administration of justice," Corrected Mandate at 3, and that *Floyd* and *Ligon* were therefore properly reassigned to a different district judge. There is no merit to the *Floyd* plaintiffs' complaint that they are prejudiced because a new judge may have to learn this complex and lengthy record. Any such concerns are exaggerated, as any Southern District judge is no doubt well-equipped to comprehend the thrust of the issues

- 11 -

presented.  They also may well prove to be illusory, especially in light of the City's strong likelihood of success on the merits.

      1.    Inviting *Floyd* to be Filed as Related to *Daniels*,  and Accepting *Floyd* as Related, Violated the Southern District's Related Case Rule

Under Local Rule 13 (formerly Local Rule 15) of the Southern District's Rules for the Division of Business Among Judges, cases may be deemed related to promote the "efficient and economical conduct of the litigations."  Rule 13(a)(ii).  Such a efficiency may be furthered, for example, if there is a "likelihood of a consolidated or joint trial or joint pre-trial discovery."  Rule 13(a).   A plain reading of the rule shows that a case may only be "related" to another pending case.[7]  Mere familiarity with an issue raised in another case, especially a closed case, is not a basis for relatedness, or else the related-case rule would be vulnerable to abuse by litigants intent on judge-shopping.

---

[7] For example, Rule 13(a)(ii) refers specifically to "efficient and economical conduct of the *litigations*."  The rule goes on to state that "the likelihood of a consolidated or joint trial or joint pre-trial discovery" may be relevant to determining whether two cases should be deemed related.  Moreover, 13(c)(ii) directs that "[a] case designated as related shall be forwarded to the judge before whom the earlier-filed case *is then pending*..." (emphasis added).  Recent decisions involving Local Rule 13 are based on motions to deem a case related to another pending litigation, not a closed one.  *See, e.g., Pace v. Quintanilla*, 13 Civ. 91 (RJS), 2013 U.S. Dist. LEXIS 139601 at *14-15 (S.D.N.Y. Sept. 23, 2013); *Tutor Time Learning Ctrs., LLC v. GKO Group, Inc.*, 13 Civ. 2980 (JMF), 2013 U.S. Dist. LEXIS 148316 at *1-2 (S.D.N.Y. Oct. 15, 2013).  Further, Local Rule 1.6(a), which imposes responsibilities on attorneys with respect to potentially related cases, refers to "pending" cases only: "[i]t shall  be the continuing duty of each attorney appearing in any civil or criminal case to bring promptly to the attention of the Court all facts … relevant to a determination that said case and one or more *pending* civil or criminal cases should be heard by the same Judge…" (emphasis added).

- 12 -

When the District Judge suggested in December 2007 that *Floyd* could be marked related to *Daniels*, the *Daniels* case, centering on alleged racial profiling by the now-defunct Street Crimes Unit of the NYPD, had been "terminated" on the District Court's docket since 2005, after the parties entered into a settlement agreement in 2004.  To be sure, the plaintiffs brought a dispute regarding that settlement agreement to the District Judge's attention in 2007, but that circumstance did not justify taking *Floyd* as related to *Daniels*.  The District Judge and the *Floyd* plaintiffs have now suggested that *Floyd* was related to *Daniels* because the plaintiffs filed *Floyd* instead of moving for contempt in *Daniels,* and because *Floyd* relied on evidence that was "newly discovered" as a result of the *Daniels* settlement.  District Judge Motion at p. 11, ¶31-33; Floyd Motion at 12. Neither explanation holds water.  *Floyd* is not styled as a contempt or a breach of contract motion;[8] rather, it is an entirely new lawsuit alleging City-wide Fourth and Fourteenth Amendment violations.  Furthermore, that some of the evidence *Floyd* plaintiffs cited stems from the *Daniels* settlement is completely beside the point, as the District Judge had never seen that evidence or yet ruled on its validity or relevance.  Judicial efficiency was thus not fostered in assigning *Floyd* to Judge

---

[8] In fact, far from moving for contempt, plaintiffs were trying to invoke the alternative dispute resolution procedures set forth in the *Daniels* settlement, but as the District Court recognized, they failed to follow the plain language of those procedures and had no good faith basis for their allegations of non-compliance with the plain terms of the settlement agreement.

- 13 -

Scheindlin; the litigation essentially proceeded from scratch, with fresh allegations of racial profiling that needed to be explored in discovery and proved at trial.

By nevertheless suggesting that *Floyd* could be related to *Daniels,* and then accepting *Floyd* as related, the District Judge plainly gave rise to reasonable questions about her impartiality. She herself appeared to recognize her wrongdoing – or at least a disinterested observer could so conclude – when she conceded that she "may get in trouble for this." Exh. 4 to District Judge Motion (*Daniels* Transcript, at p. 14). Indeed, during the same proceeding, the District Judge assured plaintiffs that she would order the City to produce in discovery all the documents plaintiffs were trying to retain beyond the expiration of the *Daniels* settlement, over the City's objection. The District Judge then overruled the City's objection, allowing plaintiffs to rely on those documents in crafting their complaint in *Floyd* (*id.*, pp. 21-24).[9]

The appearance of impropriety resulting from the District Judge taking *Floyd* as related to *Daniels* has only magnified over time, as plaintiffs have succeeded in getting five other cases assigned to Judge Scheindlin as related to

---

[9]      In her recent public statements, the District Judge emphasized that she ruled for the City on the contempt motion, despite the fact that no such motion had been filed. Moreover, she elided entirely the fact that she ruled for plaintiffs on the protective order issue, which was the crux of their application. See Hamblett, *Circuit Rebuffs Scheindlin on Stop/Frisk*.

*Floyd.*[10]  The City has objected on many occasions, but each time to no avail.  On

only two occasions has the District Judge declined to accept cases as related to

*Floyd*; and only after The New York Times questioned how she came to be

assigned to *Floyd*.[11]

Other plaintiffs have also strained to mark cases as related to other cases

pending before Judge Scheindlin, in an apparent effort to have the case heard by a

judge they view as sympathetic to their claims.  For one flagrant example, in 2011,

attorneys Emery Celli Brinckerhoff & Abady filed *Joshua Long v. City of New*

---

[10]     Those case are: (1) *Blair v. City of New York*, 08 Civ. 04303 (alleging a single unlawful stop-and-frisk and demanding that NYPD records of such stops be sealed), filed May 7, 2008 by *Ligon* plaintiffs' counsel, the New York Civil Liberties Union (Christopher Dunn); (2) *Davis, et al. v. City of New York*, 10 Civ. 699 (alleging Fourth and Fourteenth Amendment violations in NYPD trespass enforcement policies in public housing), filed on January 28, 2010 by NAACP Legal Defense & Educational Fund, Inc., The Legal Aid Society, and Paul, Weiss, Rifkind, Wharton & Garrison LLP; (3) *Provost v. City of New York*, 10 Civ. 5672 (alleging a single unlawful stop-and-frisk), filed July 26, 2010 by *Floyd* plaintiffs' counsel, Beldock Levine & Hoffman LLP (Jennifer Borchetta and Jonathan C. Moore); (4) *Almonor, et al. v. City of New York*, 11 Civ. 4121 (alleging a single unlawful stop-and-frisk, along with claims of wrongful arrest and prosecution by other plaintiffs), filed on June 17, 2011 by *Floyd* plaintiffs' counsel, Beldock Levine & Hoffman LLP (Jennifer Borchetta and Jonathan C. Moore) and Law Offices of Joel Rudin; and (5) *Ligon, et al. v. City of New York*, 12 Civ. 2274 (alleging Fourth and Fourteenth Amendment violations in NYPD trespass enforcement policies in privately-owned buildings), filed on March 28, 2012 as related to *Davis* by the New York Civil Liberties Union (Christopher Dunn), Shearman & Sterling LLP, The Bronx Defenders, and LatinoJustice PRLDEF.

[11]     The first case, *Felix v. City of New York*, 13 Civ. 2941 (alleging violations of Fourth Amendment rights in connection with marijuana arrests), filed May 2, 2013 by Emery Celli Brinckerhoff & Abady, LLP, and marked as related to *Floyd* during trial, was returned to the wheel after the City objected because, among other reasons, the related case rule could not possibly apply to a new case filed while the other case is being tried.  Judge Scheindlin did not return the case to the wheel until May 20, 2013.  The other case, *Oumou Bah v. City of New York* (challenging NYPD's treatment of emotionally disturbed persons), filed September 23, 2013 by Young and Bartlett, LLP, Newman Ferrara LLP, and Sichenzia Ross Friedman Ference, LLP, was marked related to *Floyd* following the issuance of the liability and remedial decisions in Floyd and declined as unrelated on September 30, 2013.

*York*, 11 Civ. 5125, alleging that Long had been unlawfully arrested and charged with disorderly conduct for blocking the sidewalk.  The case was marked related to *Brown v. Kelly*, 05 Civ. 5442, a long-running class action before Judge Scheindlin concerning unlawful arrests for loitering with the purpose of begging.  Judge Scheindlin accepted the *Long* case as related over the City's objection.  Long had not been arrested for loitering.

Under all of these circumstances, the *Floyd* plaintiffs are in no position to accuse the panel of relying on "trivial intrajudicial comments plucked out of context without regard to the fairness [the District Judge] exhibited during years of litigation."  (*Floyd* Motion at 11).  The *Floyd* plaintiffs leapt at the District Judge's suggestion to mark *Floyd* related to *Daniels*, and other plaintiffs then followed suit, marking case after case related to others pending before her.  Such blatant forum-shopping undoubtedly undermines the interest, and appearance, of fair and impartial administration of justice.

2.    <u>The District Judge's Media Interviews and Public Statements, Including Those Made After Issuance of the Corrected Mandate, Add to the Appearance of Partiality.</u>

In concluding that the District Judge compromised the appearance of impartiality, in part, by giving "a series of media interviews and public statements purporting to respond publicly to criticism of the District Court," the panel cited three specific examples.  Corrected Mandate at 2-3.  While the District Judge and

the *Floyd* plaintiffs note that the District Judge carefully told reporters that she was not talking about *Floyd*, that fact is inconsequential.

First, the *Floyd* plaintiffs essentially concede what the panel recognized: disclaimers aside, a reasonable observer would link the District Judge's public statements with the *Floyd* trial.  As the *Floyd* plaintiffs summarize, in the very midst of "the most highly publicized civil rights trial in a generation," the District Judge responded to media reports that she "harbored bias against law enforcement based on a report from the office of Mayor Michael Bloomberg" (*Floyd* Motion, at 2).  Further, according to the *Floyd* plaintiffs, "[t]he public had an interest in understanding the jurist overseeing the trial of this historic proceeding, particularly in light of the attacks Defendant released against her through the media" (*Floyd* Motion at 14).[12]  Notwithstanding any such interest, this observation only confirms that the District Judge's comments, including calling the criticism "below-the-belt," were related to the ongoing proceedings before her, or certainly could be seen as such.[13]

---

[12]    The *Floyd* plaintiffs' suggestion that the District Judge was obligated to respond to the attack on her impartiality because of a judge's obligation to engage in "community outreach activities" (*Floyd* Motion at 14, citing Code of Conduct, Canon 1.2, at comment 6) is frivolous.

[13]    Specifically, the District Judge observed that the statistics at issue failed to take into account rulings from the bench, but of course rulings from the bench by other judges on the list were also not considered.  In any event, the District Judge's statements went beyond correcting any purported misrepresentations.  *See, e.g.*, *In re Boston's Children First*, 244 F.3d 164,170 (1st Cir. 2001).  It is worth noting, without conceding the accuracy of the account, that the District Judge has now gone still further in her Motion, by recounting a private conversation with the Corporation Counsel after the Lexis research became public (District Judge Motion, p. 13, ¶42).

Likewise, the District Judge's comments as reported in *The New Yorker*, while ostensibly not specifically about *Floyd*, could well be seen as relating to the case. Under a headline directing the public's attention to the stop-and-frisk litigation, the District Judge characterized herself as "not afraid to rule against the government." *See* Jeffrey Toobin, *A Judge Takes on Stop-and-Frisk*, The New Yorker, May 27, 2013. She is then quoted as preferring to write judicial opinions rather than presiding over "tedious" trials – with a specific reference to the Floyd proceedings that very day – because they give her an opportunity to "push[ ] the margins of the envelope" and "be creative." *Id*. These comments, too, could reasonably appear to an informed observer to capture the judicial philosophy the District Judge intended to apply to the *Floyd* case.

In short, even if the District Judge did not mean to discuss *Floyd*, the damage has been done. Her remarks could be interpreted as relating to the case and thus undermine the appearance of impartiality. Apart from the content of the interviews, it is simply inappropriate for a federal judge to give media interviews while in the midst of such a controversial trial, especially where she appears to telegraph her approach to that very case. The District Judge thus failed to heed "an inherent aspect of a judge's position when the oath of judicial office is taken, [to be] seen and heard only through his or her opinions." *Primerica*, 10 F.3d at 166.

---

- 18 -

The consequences of that failure were particularly acute here, where, by *Floyd* plaintiffs' choosing, "the judge is the actual trier of fact" and "the need to preserve the appearance of impartiality is especially pronounced." *Id*. [14]

III.    The Challenge to Appellate Jurisdiction is Unavailing

In issuing the stay, this Court found that each of the District Court Orders "may or will have the effect of causing actions to be taken by defendants or designees of the District Court, or causing restraints against actions that otherwise would be taken by defendants." Corrected Mandate at 2.  Nevertheless, in a last-ditch effort, the *Floyd* plaintiffs reprise the argument, made in response to the City's stay application, that this Court did not have appellate jurisdiction to hear the stay application because the City purportedly has no obligation to act under the District Court Orders  (*Floyd* motion at 7-9).[15]

Yet, when asked at oral argument, no party contended that the City could "go limp" and do nothing without fear of contempt in the face of the District Court Orders.  Nor did any party or *amici* refute the common sense conclusion that those Orders, and the swirl of publicity surrounding them, continued to wreak uncertainty among the rank and file, chilling law enforcement and posing an

---

[14]     By stipulation entered March 8, 2013, the *Floyd* plaintiffs withdrew their claims for damages, eliminating the City's right to a jury trial.  *Floyd* Dist. Ct. Dkt. # 270.

[15]     The *Floyd* plaintiffs moved to dismiss the appeal on September 24, 2013 (ECF #76).  The City submitted a memorandum in opposition on October 7, 2013 (ECF #143).  This Court deferred formally deciding that motion until it considered the merits of the appeal, but permitted plaintiffs to argue to the motion panel that the stay should be denied for lack of appellate jurisdiction (ECF #157, 208).

untenable risk to public safety. The City convincingly established that the Remedies Order set forth non-negotiable acts that it had to undertake, even if some details still required development, and that the appellate perspective of the core legal issues for appeal – the very bases for the Liability Order --  would not change if further developments evolved under the Remedies Order.  The appellate stage was set with the simultaneous issuance of the District Court Orders.  As the Floyd plaintiffs do nothing more than restate the arguments put forth in their motion to dismiss the appeal, the City respectfully refers this Court to its opposition to that motion (*Floyd* ECF #143) ).

CONCLUSION

For all of these reasons, the motions should be denied.

Respectfully Submitted,


_____
MICHAEL A. CARDOZO
Corporation Counsel of the
    City of New York
Attorney for Defendant-Appellant