UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DAVID FLOYD, *et al.*,

        Plaintiffs-Appellees,

-against-

CITY OF NEW YORK, *et al.*,

        Defendants-Appellants.

Docket No. 13-3088

**BRIEF *AMICI CURIAE* OF LAW PROFESSORS STACY CAPLOW, ERWIN CHEMERINSKY, BRETT DIGNAM, LAURA K. DONOHUE, ERIC M. FREEDMAN, AMANDA FROST, BRANDON GARRETT, JAMAL GREENE, JONATHAN HAFETZ, AZIZ HUQ, KARL MANHEIM, CARLIN MEYER, JAMES SAMPLE, ADAM STEINMAN, COLIN STARGER, KENDALL THOMAS AND STEPHEN VLADECK IN SUPPORT OF PLAINTIFFS-APPELLEES' MOTION FOR EN BANC REHEARING**

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

*Attorneys for* Amici Curiae *Law Professors and Scholars with Appellate Jurisdiction Expertise*

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................ ii-iv

INTEREST OF AMICI ........................................................................................ 1

ARGUMENT ...................................................................................................... 2

    I.     The District Court Has Not Yet Issued an Injunction ..................................... 3

    II.    Section 1292(a)(1) Does Not Authorize Appeal From an Order that Is Not an Injunction ................................................................. 6

         A.     Precipitous Appeal Should Be Avoided to Allow for Full Development of Appealable Issues in the District Court ..................... 6

         B.     This Court Has Adopted a Strict Reading of § 1292(a)(1) That Is Incompatible with the Exercise of Jurisdiction In This Case ............................................................................................ 10

CONCLUSION .................................................................................................. 13

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Arthur v. Nyquist*,
   547 F.2d 7 (2d Cir. 1976) ............................................................................................ 3

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ...................................................................................................... 6

*City of Bridgeport v. Bridgeport Guardians*,
   No. 05-2481-cv, 2007 WL 4376109 (2d Cir. Dec. 11, 2007) ..................................... 12

*Di Bella v. United States*,
   369 U.S. 121 (1962) .................................................................................................... 9

*Frederick L. v. Thomas*,
   557 F.2d 373 (3d Cir. 1977) .............................................................................. 6, 11, 12

*Giove v. Stanko*,
   49 F.3d 1338 (8th Cir. 1995) ....................................................................................... 8

*Groseclose v. Dutton*,
   788 F.2d 356 (6th Cir. 1986) ....................................................................................... 5

*Hart v. Cmty. Sch. Bd.*,
   497 F.2d 1027 (2d Cir. 1974) ............................................................................ 5, 8, 11

*Henrietta D. v. Giuliani*,
   246 F.3d 176 (2d Cir. 2001) .............................................................................. 3, 4, 12

*Hoots v. Pennsylvania*,
   587 F.2d 1340 (3d Cir. 1978) ........................................................................... 5, 6, 11

*Huminski v. Rutland City Police Dep't*,
   221 F.3d 357 (2d Cir. 2000) ........................................................................................ 9

*Johnson v. Jones*,
   515 U.S. 304 (1995) ................................................................................................ 7, 8

*Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*,
   426 U.S. 394 (1976) .................................................................................................... 8

*Khan v. U.S. Dep't of Justice,*
   494 F.3d 255 (2d Cir. 2007) ........................................................................................ 3

*Liu v. INS*,
  508 F.3d 716 (2d Cir. 2007) ............................................................................... 3

*Mercer v. Magnant*,
  40 F.3d 893 (7th Cir. 1994) ............................................................................... 5

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*,
  370 F.3d 275 (2d Cir. 2004) ..................................................................7, 10, 11

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ........................................................................................... 6

*Moreno-Bravo v. Gonzales*,
  473 F.3d 253 (2d Cir. 2006) ............................................................................... 3

*Morrissey v. Curran*,
  650 F.2d 1267 (2d Cir 1981) ...................................................................... 10, 11

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tehcs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) ............................................................................... 4

*Resident Advisory Bd. v. Rizzo*,
  564 F.2d 126 (3d Cir. 1977) ............................................................................... 3

*S. Ute Indian Tribe v. Leavitt*,
  564 F.3d 1198 (10th Cir. 2009) .......................................................................... 5

*Sahu v. Union Carbide Corp.*,
  475 F.3d 465 (2d Cir. 2007) ............................................................................... 6

*Spates v. Manson*,
  619 F.2d 204 (2d Cir. 1980) .................................................................... 5, 11, 12

*Taylor v. Bd. of Educ.*,
  288 F.2d 600 (2d Cir. 1961) ....................................................................*passim*

*United States v. Bedford Assocs.*,
  618 F.2d 904 (2d Cir. 1980) ............................................................................... 5

*W. Geophysical Co. of Am. v. Bolt Assocs., Inc.*,
  463 F.2d 101 (2d Cir. 1972) ............................................................................... 7

## **FEDERAL STATUTES**

28 U.S.C. § 1291 ................................................................................................... 3, 5

28 U.S.C. § 1291(a)(1) ............................................................................................. 3

28 U.S.C.§ 1292 ....................................................................................................... 5

28 U.S.C. § 1292(a)(1) .................................................................................................*passim*

**FEDERAL RULES**

Fed. R. App. P. 29 ........................................................................................................ 1

Local Rule 29.1(b) ........................................................................................................ 1

**OTHER AUTHORITIES**

Wright & Miller, *Federal Practice and Procedure* (2012) ....................................... 3, 5, 7, 8

Pursuant to Fed. R. App. P. 29, Professors Stacy Caplow, Erwin Chemerinsky, Brett Dignam, Laura K. Dohnohue, Eric M. Freedman, Amanda Frost Brandon Garrett, Jamal Greene, Jonathan Hafetz, Aziz Huq, Karl Manheim, Carlin Meyer, James Sample, Adam Steinman, Colin Starger, Kendall Thomas and Stephen Vladeck submit this brief as amici curiae, in support of Plaintiffs-Appellees' petition for en banc rehearing of the panel's October 31, 2013 order in *Floyd v City of New York*.[1]

## INTEREST OF AMICI

Amici are the following law professors who teach and write in the areas of civil procedure, federal courts and constitutional law. They have a professional interest in issues relating to the jurisdiction of the courts of appeals. They seek to offer this Court their professional academic perspective on that issue as presented in this case. They participate in this case in their personal capacity; titles are used only for purposes of identification:

**Stacy Caplow**, Associate Dean for Professional Legal
Education and Professor of Law, Brooklyn Law School

**Erwin Chemerinsky**, Founding Dean of the School of Law,
Distinguished Professor of Law, Raymond Pryke Professor of
First Amendment Law, University of California, Irvine School
of Law

**Brett Dignam**, Clinical Professor of Law, Columbia University
School of Law

**Laura K. Donohue**, Professor of Law, Georgetown Law
School

---

[1] Pursuant to Fed. R. App. P. 29(c)(5) and Local Rule 29.1(b), amici confirm that no party or its counsel, and no third party other than amici and their counsel, authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting the brief.

1

**Eric M. Freedman**, Maurice A. Deane Distinguished Professor of Constitutional Law, School of Law at Hofstra University

**Amanda Frost**, Professor of Law, American University Washington College of Law

**Brandon L. Garrett**, Professor of Law, University of Virginia School of Law

**Jamal Greene**, Professor of Law, Columbia University School of Law

**Jonathan Hafetz**, Associate Professor of Law, Seton Hall University School of Law

**Aziz Huq**, Assistant Professor of Law, University of Chicago School of Law

**Karl Manheim**, Professor of Law, Loyola Law School

**Carlin Meyer**, Professor of Law, Director, Diane Abbey Law Center for Children and Families, New York Law School

**James Sample**, Associate Professor, Hofstra Law School

**Adam Steinman**, Professor of Law, Seton Hall University School of Law

**Colin Starger**, Assistant Professor, University of Baltimore School of Law

**Kendall Thomas**, Nash Professor of Law, Director, Center for the Study of Law and Culture, Columbia University School of Law

**Stephen Vladeck**, Professor of Law, Associate Dean for Scholarship, American University Washington College of Law

## ARGUMENT

This appeal is not properly before this Court. The panel exceeded its jurisdiction when it issued its October 31, 2013 order staying the district court's liability and remedial

orders and removing Judge Scheindlin from the case. The orders from which the City of New York ("the City") appeals are indisputably non-final and require nothing more than for the City to participate in the development of a remedial plan. Recognizing that "[i]t would be unwise and impractical" to impose *any* reforms "prior to input from the Monitor and the [parties]," the district court ordered that "reforms . . . be developed and submitted to the Court as soon as practicable, *and implemented when they are approved*" by the district court—not before. Remedial Order 13-14 (emphasis added). Because the district court has not yet ordered any substantive relief—and because the nature of the relief that will soon be granted remains largely undetermined, subject to change and likely contested—appeal is premature. This Court has "no power to entertain the [City's] appeal until the District Court has finished its work by directing the [City] to take or refrain from action." *Taylor v. Bd. of Educ.*, 288 F.2d 600, 602 (2d Cir. 1961). The Court should dismiss the appeal for lack of jurisdiction, vacate the October 31 order[2] and remand the case to the district court for further proceedings, with the understanding that an appeal can be taken when the district court issues an injunction.

## I.     The District Court Has Not Yet Issued an Injunction

The parties agree that the district court orders are not "final decisions" appealable under 28 U.S.C. § 1291. *See* Dkt. # 76; Dkt. # 143. Rather, the City argues that the remedies order is appealable as an injunction under 28 U.S.C. § 1292(a)(1). Dkt. # 143 at 4. The City is wrong. "To qualify as an 'injunction' under § 1292(a)(1), a district order must grant at least part of the ultimate, coercive relief sought by the moving party."

---

[2] *See, e.g.*, *Liu v. INS*, 508 F.3d 716, 723-24 (2d Cir. 2007) (dismissing appeal for lack of jurisdiction and therefore vacating stay previously granted); *Moreno-Bravo v. Gonzales*, 473 F.3d 253, 265 (2d Cir. 2006); *see also Khan v. U.S. Dep't of Justice*, 494 F.3d 255, 260 (2d Cir. 2007) (dismissing appeal for lack of jurisdiction and denying stay as moot).

3

*Henrietta D. v. Giuliani*, 246 F.3d 176, 181 (2d Cir. 2001).[3] The order appealed from here does not require the City to implement any substantive reforms on pain of sanctions. To the contrary, the district court has done nothing more than construct a procedural framework under which specific measures can be considered by the court, with input from all interested parties. The only action the court has "compelled" is litigation-related activity no different in kind from the myriad other forms of activities that courts require litigants to engage in to efficiently move cases: meet-and-confer discussions, mandated settlement conferences and, indeed, the required submission of remedial plans in the wake of a liability finding. Given the complexity of the tasks before it, and the parties' no-doubt competing visions of what a compliance regime will look like, the district court has elected to work through a monitor, whose role is "to develop, based on consultation with the parties, a set of reforms," including both what the court termed "Immediate Reforms" and those it called "Joint Process Reforms." Remedial Order 12. While the court identified several categories of specific "immediate" reforms that the City will be required to implement "as soon as practicable,"[4] it also stated unequivocally that *both* the "immediate" and the "joint process" reforms will be implemented only "*when they are approved by the Court.*" *Id*. (emphasis added); *see also id.* at 13-14 (directing that even

---

[3] *Accord* Wright, Miller et al., *Federal Practice and Procedure* § 3922, at 72 (2012) ("If an affirmative definition of a § 1291(a)(1) 'injunction' must be attempted, it would embrace orders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary fashion." (internal quotation marks and footnotes omitted)). *See also Arthur v. Nyquist*, 547 F.2d 7, 7 (2d Cir. 1976) (order appealable where, in part, it enjoined defendants "from taking any further action in violation of plaintiffs' rights" (internal quotation marks omitted)); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 138 (3d Cir. 1977) (similar).

[4] Those so-called "immediate reforms" include: revising the forms officers use to record stop and frisk (known as UF-250 forms); issuing a message (referred to as a FINEST message) to officers explaining the district court's orders; revising training manuals and practices; and implementing a body-camera pilot program.

4

the "initial set of reforms" were to be "developed and submitted to the Court as soon as practicable, *and implemented when they are approved.*" (emphasis added)). Until further order from the district court, the only the thing that the City is "clear[ly] and unambiguous[ly]" required to do—and therefore the only aspect of the remedial order enforceable by contempt, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tehcs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted)—is to participate in this remedial process.

An order to participate in the development of a remedial order is not an order "designed to accord . . . some or all of the substantive relief sought by a complaint," Wright & Miller § 3922, at 72.[5] Such participation is "'merely a step in a judicial proceeding leading to the formulation of relief.'" *Spates v. Manson*, 619 F.2d 204, 210 (2d Cir. 1980) (quoting *Hoots v. Pennsylvania*, 587 F.2d 1340, 1351 (3d Cir. 1978)) (alteration omitted).[6] Therefore, "when a district court has simply found [a constitutional violation] and has directed [the defendant] promptly to submit a plan for ending it, without any 'injunction' other than the direction to file the plan, the decision is not appealable at that time." *Hart v. Cmty. Sch. Bd.*, 497 F.2d 1027 (2d Cir. 1974).[7]

---

[5] *See id.* § 3922.2 (where courts order "that the parties prepare plans for injunctive relief . . . [j]urisdiction ordinarily is denied, despite the often substantial burdens that may be involved in framing a complex decree").

[6] *Accord Taylor*, 288 F.2d at 604 ("[A] command that relates merely to the taking of a step in a judicial proceeding is not generally regarded as a mandatory injunction.").

[7] *See also City of Bridgeport v. Bridgeport Guardians, Inc.*, No. 05-2481-cv, 2007 WL 4376109, at *2 (2d Cir. Dec. 11, 2007) (summary order) (an order to submit a plan is not a final order reviewable under § 1291 or an injunction reviewable under § 1292); *S. Ute Indian Tribe v. Leavitt*, 564 F.3d 1198, 1206 (10th Cir. 2009) (adopting appellee's argument that an order that parties "meet and negotiate a contract . . . addressed only the process of litigation, which is not in and of itself an appealable order"); *Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994) ("Orders to prepare plans that when adopted will be injunctions are not themselves injunctions, even if the process of preparation is extended and expensive."); *Groseclose v. Dutton*, 788 F.2d 356, 359 (6th Cir. 1986) ("This court has consistently rejected attempts to obtain review of orders requiring the submission of

## II. Section 1292(a)(1) Does Not Authorize Appeal From an Order that Is Not an Injunction

The district court did not issue an injunction within the meaning of § 1292(a)(1), but the City encourages the Court nonetheless to exercise jurisdiction absent statutory authorization based on a theory developed by the Third Circuit in *Frederick L. v. Thomas*, 557 F.2d 373 (3d Cir. 1977). According to *Frederick L.*, jurisdiction lies even absent an injunction where a district court directs a party to submit a plan for reform and "specifie[s] the nature, requirements and extent of the relief to be afforded by the plan to be submitted," *Hoots*, 587 F.2d at 1349. Broad application of the *Frederick L.* doctrine would expand § 1292(a)(1)'s narrow exception to the final judgment rule beyond its statutory limits, thereby "undermin[ing] efficient administration and encroach[ing] upon the prerogatives of district court judges, who play a special role in maintaining ongoing litigation," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotation marks omitted). This Circuit has therefore applied the doctrine rarely and, even then, narrowly. The Court should continue to do so or, in the alternative, clarify that § 1292(a)(1) admits no such exception and creates jurisdiction *only* when a court issues an injunction—not when it states an intent to issue an injunction. Either way, the remedial order is not appealable under the analysis of *Frederick L.*

### A. Precipitous Appeal Should Be Avoided to Allow for Full Development of Appealable Issues in the District Court

Because it "was intended to carve out only a limited exception to the final-judgment rule," § 1292(a)(1) must be "construed . . . narrowly," *Carson v. Am. Brands,*

---

remedial plans."). *Cf. United States v. Bedford Assocs.*, 618 F.2d 904, 915-16 & n.22 (2d Cir. 1980) ("We have held non-appealable under § 1292(a)(1) orders . . . [that] regulated such matters as procedures, disclosures, or conduct that was not the subject of the lawsuit." (citing *Taylor*, 288 F.2d 600)).

6

*Inc.*, 450 U.S. 79, 84 (1981).[8] Efforts to expand § 1292(a)(1) beyond its core application should be rejected, as "rules that permit too many interlocutory appeals can cause harm," *Johnson v. Jones*, 515 U.S. 304, 309 (1995).[9] This Court has not followed the lead of courts that have adopted under § 1292(a)(1) an "expansive approach to appeals from orders to submit proposed injunction decrees," Wright & Miller § 3922.2, at 126. Instead, it construes § 1292(a)(1) to allow appeal only when an injunction has issued or a court has dictated the precise acts to be performed within an established timeframe, and only ministerial details of execution remain.[10] The City encourages the Court to adopt a looser approach in this case and to exercise jurisdiction in the absence of an injunction "on the open-ended theory that appeal [is] proper because . . . development of [the] decree [will] not improve the court's understanding of the case." Wright & Miller § 3922.2, at 126.[11] The invitation should be rejected. Allowing the City to appeal the remedial order at this pjoint—before a single injunction has been formulated and issued by the district court— would give rise to each of the ills threatened by interlocutory appeals, which "can make it more difficult for trial judges to do their basic job [of] supervising trial proceedings"; "can

---

[8] *See also Sahu v. Union Carbide Corp.*, 475 F.3d 465, 467 (2d Cir. 2007) ("Section 1292(a)(1) functions as a narrowly tailored exception to the policy against piecemeal appellate review." (internal quotation marks omitted)); *Huminski v. Rutland City Police Dep't*, 221 F.3d 357, 359 (2d Cir. 2000) ("Without a showing of serious consequences and the lack of an effective appeal, the policy against piecemeal appellate review embodied in the final judgment rule must prevail over the narrowly tailored exception of 28 U.S.C. § 1292(a)(1)." ((internal quotation marks omitted)).
[9] *See W. Geophysical Co. of Am. v. Bolt Assocs., Inc.*, 463 F.2d 101, 105 (2d Cir. 1972) ("In considering the application of § 1292(a)(1) to borderline cases . . . , [the Court] must be ever mindful that it was intended as a narrow exception to the policy of the basic final judgment rule, a wisely sanctioned principle against piecemeal appeals governing litigation in the federal courts." (internal quotation marks omitted)).
[10] *See McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004), discussed *infra*.
[11] *See* Dkt. # 143 at 2 (urging the court not to dismiss the appeal because "the essential contours of the immediate reforms have already been spelled out and . . . the perspective of the appeal will not change once details like wording [of the FINEST message] are worked out")

threaten those proceedings with delay, adding costs and diminishing coherence"; and "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." *Johnson*, 515 U.S. at 309.[12]

Wright and Miller have condemned some courts' willingness to "[a]dd[] flexible injunction concepts" to allow for immediate appeal from an order pertaining to the development of an injunction without waiting for the issuance of an actual injunction. They note the tendency of such a practice to

> generate more confusion than good. The process of framing a decree often deepens understanding of a case in fundamental ways, both in the trial court and in the court of appeals. Appeal before the decree is entered can delay actual relief inordinately, and creates a manifest risk of a separate appeal after a decree is entered.

Wright & Miller § 3922.2, at 128. This Court has likewise recognized the benefits of avoiding "premature" appeals to allow for full development of "a decree from which defendants have a clear right of appeal," so that the Court "can then consider the decision of the District Court, not in pieces but as a whole, not as an abstract declaration inviting the contest of one theory against another, but in the concrete." *Taylor*, 288 F.2d at 605.[13] Allowing the district court to develop and issue an injunctive order is "likely to produce

---

[12] *See also Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976) ("[P]articularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation.").

[13] *See also Hart*, 497 F.2d at 1031 (emphasizing the need to avoid "forced . . . consideration, on an expedited basis . . . , of a most serious constitutional question to which the district judge devoted months of thought, which the cooperative efforts of the judge, the master, and the parties, conceivably although perhaps optimistically, may make it unnecessary for [the court] to decide at all, and which at least will be given concrete and integrated form by those efforts so that review 'in pieces' and in the 'abstract' can be avoided").

an order that is . . . more final than the one at issue," *Giove v. Stanko*, 49 F.3d 1338, 1341 (8th Cir. 1995) (internal quotation marks omitted).

"The § 1292(a)(1) exception allowing immediate appeals of orders dealing with motions regarding injunctions" increases the likelihood of piecemeal review and delays resolution of the action, and should therefore be allowed only in "circumstances of some urgency in which the moving party is said to be threatened with imminent irreparable injury unless injunctive relief is granted." *Huminski*, 221 F.3d at 360. While the City may "dislike . . . presenting a plan . . . and attending hearings thereon that would be unnecessary if the finding of liability were ultimately to be annulled, and also the possibility of unwarranted expectations this course may create, this is scarcely injury at all in the legal sense and surely not an irreparable one." *Taylor*, 288 F.2d at 603. The City has not been directed to change its behavior outside the context of the litigation; "a defendant's apprehension that conduct on his part may ultimately be restrained is not an 'injunction' within § 1292(a)(1)," *id.* Until an injunction issues, the reforms outlined in the district court's remedial order will be subject to debate and revision. Remedial Order 13. At this time "we can only conjecture" as to the form and contents of the injunction that will result from the remedial process ordered by the district court. *Taylor*, 288 F.2d at 603. Review of predicted but not definite reforms wastes judicial resources, interferes with the role of the district court and delays the administration of justice.[14]

---

[14] *See Di Bella v. United States*, 369 U.S. 121, 124 (1962) ("The insistence on finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice . . . .").

9

## B. This Court Has Adopted a Strict Reading of § 1292(a)(1) That Is Incompatible with the Exercise of Jurisdiction In This Case

This Court has consistently recognized the importance of awaiting a final decision or a fully formulated injunctive order before assuming jurisdiction. It has read *Frederick L.* narrowly and relied on its reasoning in only a single case—which differed substantially from this one—to hear an appeal that did not have an independent jurisdictional basis. *McCormick ex rel. McCormick v. School District of Mamaroneck* involved an appeal from a district court order holding that the scheduling of boys' and girls' soccer in different seasons was discriminatory and directing the district to submit a plan "pursuant to which it shall offer soccer to men and women in the same season, and further order[ing] that each such plan shall take effect in the academic year following appellate finality of this action." 370 F.3d at 283. Without discussion—or the benefit of briefing by the parties, *id.* at 285 n.10—the Court held that it had jurisdiction because "the content of the plan to be submitted has already been substantially prescribed by the district court." *Id.* (internal quotation marks omitted).[15]

The differences between *McCormick* and the present case are legion. The technical details to be ironed out in scheduling soccer games in one season as opposed to another are not likely to be relevant to appellate review of an order addressing sex discrimination. Permitting appeal prior to their finalization presented slim risk of multiple appeals. By contrast, the aspects left to be determined in the district court's remedial order in this case

---

[15] The Circuit also suggested *sua sponte* in a footnote in *Morrissey v. Curran* that the *Frederick L.* reasoning might be relevant to establishing jurisdiction in that case. 650 F.2d 1267, 1285 n.17 (2d Cir 1981). But the district court in *Morrissey* did not direct the defendant to submit a plan for remediation. Rather, it issued an injunction granting substantive relief, directing the defendant to make three specific revisions to a pension plan, the terms of which it found in violation of the Labor-Management Reporting and Disclosure Act. *Id*. at 1285.

present substantial legal questions that go to the heart of the police misconduct at issue. For example, the district court has not yet determined the content and wording of the FINEST message that will instruct officers about relevant legal standards, *see* Remedial Order 25; identified the check boxes that should be deleted from the UF-250 forms, *id.* at 21; or dictated specific revisions to training materials to ensure that they reflect the legal principles articulated by the court, *id.* at 14-17. The City refers to these difficult issues as "details," Dkt. # 143 at 2, but they involve application of thorny questions of constitutional law to the specific policies and practices of the police department, and they all are likely to be contested and therefore eventually to require this Court's review— unless the parties reach agreement in the course of their discussions, in which case premature review will have been superfluous, *see Hart*, 497 F.2d at 1031.

It is impossible to say in this case that the "precise ingredients" of the enforceable remedial plan ultimately adopted by the district court "will have no . . . metamorphosizing effect on [this Court's] understanding of this case." *Frederick L.*, 557 F.2d at 381.[16] In cases other than *McCormick*, this Court has consistently recognized that allowing district courts to fully develop injunctions before considering them on appeal has "the potential to alter in a material manner the issues that would be presented to the court of appeals," *Frederick L.*, 557 F.2d at 380, and it has resisted hearing appeals prematurely. For example, in *Spates*, the Court considered the appealability of a district court order directing prison administrators to submit a plan for providing adequate legal resources to inmates. 619 F.2d at 208. It held that *Frederick L.* did not apply, although the order "made

---

[16] *See also Hoots*, 587 F.2d at 1351 ("Important issues regarding the nature and extent of the relief to be afforded the plaintiffs still remain[s] to be resolved and [are] dependent on the particular circumstances of he case as it [is] to develop in the proceeding subsequent to the entry of [the order defendant seeks to appeal].")

11

specific recommendations as to how [the constitutional] deficiencies might be corrected," even going so far as to list 14 specific books or sets of books that the district court deemed "necessary" for an adequate law library. *Id*. at 210 (internal quotation marks omitted). In *Spates*, as here, the details laid out in the district court's order initiating the remedial process were subject to change and supplementation. *Id*.

More recently, in *City of Bridgeport v. Bridgeport Guardians*, the Court deemed non-appealable an order directing the Bridgeport Police Department to adopt a plan to remedy racial discrimination on hiring and promotions. 2007 WL 4376109. The district court had directed the defendants to include a number of very specific reforms in its plan, including provisions for "rotations of all non-supervisory personnel," beginning no later than a date specified by the court and complying with certain requirements that were also detailed by the court. *Id*. at *2. This Court acknowledged that the district court had chosen "to 'follow a path well-worn by equity judges overseeing complex, institutional litigation: determine liability first, then ask the parties to propose remedial plans to the court,'" *id*. at *3 (quoting *Henrietta D.*, 246 F.3d at 182-83), and declined to review the district court's progress until it had issued at least one injunction within the meaning of § 1292(a)(1).[17]

Here, as in *Spates* and *Bridgeport*, the continuation of the remedial process "may very well alter [the appellate court's] perspective and could change the legal issues that are presented." *Spates*, 619 F.2d at 210 (quoting *Frederick*, 557 F.2d at 381 n.49). Once the district court completes its work with respect to any of the remedies outlined in the

---

[17] *See also Taylor*, 288 F.2d at 601-02, 603 (finding no jurisdiction to review district court order directing plaintiffs to submit a desegregation plan, including specific measures such as ceasing to rebuild a segregated high school); *Henrietta D.*, 246 F.3d at 181 (holding that draft remedies will become reviewable only after they are 'so ordered' by the district court);

12

remedial order and issues an injunction that constrains the City's actions, the City can bring an appeal, and the Court can hear it under §1292(a)(1).

## CONCLUSION

For the reasons set forth above, amici respectfully requests that the Court dismiss the appeal for lack of jurisdiction, vacate the panel's October 31, 2013 order and remand to the district court for further proceedings.

Dated: November 13, 2013
     New York, New York

                                           EMERY CELLI BRINCKERHOFF
                                                &amp; ABADY LLP

                                                _____/s/_____
                                                Andrew G. Celli, Jr.
                                                Matthew D. Brinckerhoff
                                                Hayley Horowitz

                                                75 Rockefeller Plaza, 20th Floor
                                                New York, New York 10019
                                                (212) 763-5000

                                                *Attorneys for* Amici Curiae *Law Professors and Scholars with Appellate Jurisdiction Expertise*