UNITED STATES COURT OF APPEALS
for the
Second Circuit

_____

David Floyd, et al.,

                    Plaintiffs-Appellees              13-3088

      v.

City of New York,

                    Defendants-Appellants.

_____


_____

Jaenean Ligon, et al.,

                    Plaintiffs-Appellees              13-3123
                                             (Corrected)

      v.

City of New York, et al.,

                    Defendants-Appellants.

_____


**<u>Request for Leave to Submit Response to Motion Filed by<br>the City of New York to Vacate the<br>Decisions of District Judge on Grounds of Actual Bias</u>**

On November 8, 2013, the undersigned counsel sought leave to appear as

*amici curiae* on behalf of Hon. Shira A. Scheindlin (hereafter "the District Judge")

in connection with the *sua sponte* order of the Motion Panel herein, dated October

31, 2013, prospectively directing the removal of the District Judge as presiding

judge in *David Floyd et al. v. City of New York* (13-3088), and  *Jaenean Ligon, et*

*al. v. City of New York et al.* (13-3123) (corrected).  A copy of the October 31,

2013 order of the Motion Panel is annexed to *amici*'s motion dated November 8, 2013.

The Motion Panel, after staying proceedings below pending an appeal on the merits scheduled for early next year, directed that "in the interest, and appearance of fair and impartial administration of justice," the *Floyd* and *Ligon* cases "be assigned to a different District Judge, chosen randomly" in order to implement the Motion Panel's stay of proceedings.  The Motion Panel's order concluded by directing that all further appellate proceedings be considered by the same three appellate judges in the interest of judicial economy.

*Amici* have argued that the Motion Panel's order of prospective removal was procedurally inadequate, and substantively unjustified. The Motion Panel has not ruled in connection with *amici*'s motion for leave to appear, nor has the Motion Panel expressed a view on the legal issues raised by *amici*.

The City of New York (hereafter "the City") has now escalated the personal assault on the District Judge by filing a motion seeking summary retrospective vacation of her decisions below on the grounds of actual bias. This is the first time the City has raised this argument in any court.

The undersigned counsel hereby renew their motion for leave to appear as *amici curiae* on behalf of the District Judge, and submit the following response to the City's motion to vacate her decisions.

First, the City's motion is procedurally deficient because judicial resolution would rest on matters outside the record that is currently before the Motion Panel.

Second, the suggested briefing schedule is extremely compressed, calling for a response from interested parties on November 13, 2013, and a reply from the City on November 15, 2013.

Judicial inquiry into an allegation of actual bias on the part of a District Judge would require, at a minimum: (1) analysis of the entire record below, including pre-trial rulings; (2) review of the the conduct of  the trial in *Floyd* and the hearing in *Ligon*; (3) careful study of the District Court's myriad rulings in both cases; (4) careful evaluation based on factual information not in the record of the related-case practices of the Judges of the Southern District during the period in question; (5) careful analysis of the actual colloquy in *Daniels*(as opposed to misleading press reports purporting to describe it); and (6) full briefing of the legal and factual issues raised by this extraordinary effort to substitute an *ad hominem* attack on a conscientious District Judge for an appeal on the merits. *Amici* believe that a minimum of sixty days would be required to prepare an adequate response to such a motion.

Pending the setting of a reasonable briefing schedule, and the resolution of plaintiff-appellees' recently-filed request for en banc review of the Motion Panel's order, *amici* respectfully submit the following preliminary response to the City's

3

motion to vacate in order to correct misstatements on the public record concerning the behavior of the District Judge, and in order to clarify the legal and factual issues raised by the City's extraordinary motion.

On November 9, 2013, *amici* submitted a letter to the Motion Panel expressing concern that unnecessary concentration on the District Judge's conduct at this stage of the proceedings threatens to become a distraction, deflecting attention from the extremely important constitutional issues raised by the merits. The City's motion demonstrates the danger of an undue judicial focus on the District Judge at this point in the appellate process. Indeed, the City seeks to substitute what is, in effect, an appellate judicial trial of the District Judge in lieu of pursuing an appeal on the merits.

Accordingly, a*mici* renew the suggestion in their November 9, 2013 letter that the Motion Panel vacate so much of its October 31, 2013 order as focusses unnecessarily on the District Judge at this stage of the proceedings, without prejudice to the ability of the City to raise the issue at an appropriate point.

In opposition to the motion to vacate, the undersigned state:

### A.

### The Motion Panel Lacks Authority to
### Entertain an Original Motion to Vacate
### a Decision of the District Court for Actual Bias

1.  The City concedes that the New York City Police Department (hereafter "NYPD") has never raised the issue of bias, actual or apparent, in any court before launching this assault on the District Judge before an interim appellate forum that is institutionally unequipped to consider it.

2.  The Motion Panel lacks the fact-finding capacity needed to deal responsibly with the motion (See *Boumediene v. Bush*, 553 U.S. 723, 771-792 (2008) (stressing limited fact-finding capacity of Circuit courts). For example, the Motion Panel lacks access to an Appendix of the relevant lower court record, as well as access to information concerning the application of the "related case" doctrine by other Judges of the Southern District. Furthermore, the judges on the Motion Panel have not received briefing or oral argument on the complex constitutional and evidentiary issues before the District Court, other than the minimal arguments surrounding a stay application.

3.  Given the institutional inability to deal with the legal and factual issues raised by the motion to vacate, *amici* believe that the three judges who constituted the Motion Panel lack authority to entertain such an original

motion at this stage of the proceedings. Indeed, discussion of a jurisdictional predicate for this motion is conspicuously absent from the City's papers.

4. The preferred method for challenging judicial bias in an appellate court is a motion for disqualification in the District Court pursuant to 28 U.S.C. §455, followed by a mandamus proceeding governed by Rule 21(b)(4) F.R. App. Proc. Such a procedure permits the District Judge to respond to a disqualification motion, and contemplates an opportunity for the District Judge to be heard by the appeals panel. NYPD concedes that it has never sought relief in the District Court under 28 U.S.C. §455.

5. An second means of challenging actual judicial bias would be a post-trial motion in the District Court pursuant to Rule 60(b)(6) seeking to vacate the judgment in *Floyd*, followed by an appeal to the Circuit. The City concedes that it has failed to seek such relief in the District Court, despite such a forum's superior fact-finding capacity.

6. Yet a third method of challenging judicial bias, actual or apparent, in an appellate court is to include the issue in the challenging party's brief on the merits, thereby permitting the appeals court to weigh the allegations in the context of full briefing and argument on the merits with the benefit of an Appendix containing the relevant lower court record.

7. The City claims that it cannot wait to raise the issue until briefing on the merits, scheduled to be completed in March, 2014, because immediate action is needed to protect the reputation of the NYPD. The City's insistence that immediate relief is necessary is undermined by the City's failure to have raised the related-case issue in the District Court during the five years that the *Floyd* and *Ligon* cases were pending; by the failure of the City to make a post-trial Rule 60(b)(6) motion; and by the "glacial pace" noted by the Motion Panel at which the City has prosecuted this appeal from the District Court's decisions and orders dated August 12, 2013.

8. In fact, there appears to be is only one reason for the City's request for immediate vacation of the District Judge's orders – an apparent desire to deprive the Mayor-elect of the ability to determine the future course of this litigation. Such a goal cannot qualify as a justification for precipitate judicial action, or act as a substitute for appellate jurisdiction. <u>See</u> *United States v. Mendoza*, 464 U.S. 154, 161-162 (1984) (warning against efforts by outgoing administrations to tie the hands of incoming elected officials).

B.

The City Mischaracterizes
The Ruling of the Motion Panel

9. The City seriously mischaracterizes the Motion Panel's ruling as a judicial finding of bias.

10. *Amici* initially sought leave to appear on behalf of the District Judge in an effort to ensure that the Motion Panel's order charging the District Judge with having "run afoul" of the Code of Conduct for United States Judges would not be misunderstood by the public as a finding of actual bias after a full review of the record.

11. Unfortunately, that is exactly what the City has done by mischaracterizing the Motion Panel's order as a judicial finding of actual bias.

12. Viewed accurately, however, as a prophylactic effort to avoid even the appearance of a lack of neutrality in future proceedings, the Motion Panel's ruling provides no support for the NYPD's effort to vacate the District Court's orders on the basis of actual bias, without having to confront the merits of her rulings.

C.

There Is No Support in the Record for
a Finding of Judicial Impropriety

13. The City argues that a December 21, 2007 colloquy between the District

Judge and counsel in the *Daniels* case demonstrates an improper

application by the District Judge of Southern District Local Rule 13

governing "related cases," supporting an inference of actual bias.

14. The Motion Panel cited an inaccurate press report of the colloquy as the

principal basis for its *sua sponte* decision to order the prospective

removal of the District Judge. It is unclear, however, whether the Motion

Panel had access to an actual transcript of the colloquy.

15. In fact, a review of the 42 page colloquy demonstrates that the District

Judge acted properly in discussing the related case doctrine with counsel,

and that no reasonable person could view the colloquy as evidence of a

lack of neutrality.

16. In 1999, plaintiffs filed an action in *Daniels v. City of New York*,

alleging racial discrimination, and lack of articulable suspicion in

NYPD's street policing practices. The *Daniels* case was assigned to the

District Judge.

17. The *Daniels* plaintiffs were granted routine discovery, pursuant to which

NYPD turned over massive statistical data on stops and frisks and racial

profiling drawn primarily from questionnaires and surveys completed by police officers. The data, codified on computer discs, permitted statistical analyses of millions of stops.

18. Since the City argued that the material on the discs was confidential, the District Judge issued a protective order requiring the plaintiffs in *Daniels* to keep the data confidential and return all disclosed material, including the computer discs, to the City at the close of the *Daniels* case.

19. The parties in *Daniels* disagreed over what the statistical data showed. NYPD experts said it was anodyne. Experts for the plaintiffs saw a disturbing pattern.

20. The parties settled the *Daniels* case in 2004 by entering into a negotiated written agreement, which the District Judge endorsed at the request of the parties.

21. With the consent of the parties, the "So ordered" settlement agreement provided that the District Court would retain supervisory authority to oversee implementation of the settlement agreement through December 31, 2007.

22. While the *Daniels* case was marked closed as a matter of internal court productivity records once the settlement agreement was signed and marked "So ordered," the District Judge continued, pursuant to the terms

10

of the settlement agreement, to be actively engaged in supervising the implementation of the settlement agreement.

23. Indeed, for the purposes of the protective order requiring the return of all confidential information acquired during discovery upon the termination of the case, the City agreed that the *Daniels* case should be treated as pending during the supervisory period, permitting the *Daniels* plaintiffs to retain continued possession of the computer discs.

24. The core of the settlement agreement in *Daniels* was a promise that NYPD would develop and promulgate a written policy forbidding racial discrimination. NYPD promulgated such a policy in compliance with its obligations under the settlement agreement.

25. On December 21, 2007, eight days before the District Judge's supervisory authority expired in *Daniels*, plaintiffs' counsel complained that the *Daniels* settlement agreement was being ignored, and offered to produce evidence that racially discriminatory stop and frisks were continuing unabated in violation of the settlement agreement.

26. Plaintiffs' counsel urged the District Judge to hold an evidentiary hearing on whether the settlement agreement had been violated, arguing that the *Daniels* settlement agreement required more from NYPD than the mere promulgation of a policy of non-discrimination. According to

the *Daniels* plaintiffs, the settlement agreement required NYPD to

implement the anti-discrimination policy, as well as promulgate it.

27. NYPD objected, arguing that the text of the *Daniels* settlement

agreement obliged the NYPD solely to promulgate a policy of non-

discrimination, but did not oblige NYPD to do anything to implement the

policy.

28. NYPD also demanded, pursuant to the District Judge's protective order

that plaintiffs in *Daniels* return all material and information they had

obtained during discovery once the supervisory phase of the settlement

agreement expired on December 31, 2007.

29.  The District Judge informed plaintiffs' counsel in *Daniels* that, in her

opinion, it would be an inefficient expenditure of the court's time, and a

potential waste of the parties' resources, to engage in extensive litigation

in *Daniels* about  whether the settlement agreement gave the supervising

District Judge power to hear evidence concerning implementation of the

policy barring racial discrimination.

30.  The District Judge explained that if NYPD's narrow and literal

construction of the *Daniels* settlement agreement eventually prevailed

after months of litigation, the plaintiffs would be obliged to commence a

new case in order to enforce the non-discrimination policy promulgated

pursuant to the *Daniels* settlement agreement.  See *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994) (enforcement of terms of settlement agreement should take place in plenary action).

31. In the interest of judicial economy, the District Judge suggested that an immediate filing of such an enforcement action would obviate the need for months of unnecessary litigation over her authority in *Daniels*.

32. Such a new action, the District Judge observed, would fall under Southern District Local Rule 13 governing the assignment of "related cases" to a judge who had heard an earlier related case.

33. The District Judge's reading of Rule 13 was undoubtedly reasonable. Indeed, it is difficult to imagine two cases more "related" than an effort in Case 2 (*Floyd*) to enforce the settlement agreement in Case 1 (*Daniels)*.

34. The adoption of such a reasonable reading of Rule 13 is neither evidence of actual bias - nor grounds for concern over an appearance of bias.

35. The *Daniels* plaintiffs explained to the District Judge that they could not commence a new case because the evidence needed to draft a new complaint was contained on the computer discs that they were obliged to return to the City in eight days pursuant to the protective order.  Counsel

explained that, in compliance with the District Court's protective order, plaintiffs had not made copies of the computer discs.

36. The District Court then noted that under the settlement agreement her supervisory authority extended through January, 2008 in order to permit the resolution of late-breaking disputes. Accordingly, without objection from the City, she granted leave to counsel to retain the computer discs until the end of January, 2008 to permit plaintiffs to draft the necessary complaint, which was filed on January 31, 2008 as the *Floyd* case.

37. The newly filed *Floyd* case was designated a related case to *Daniels* by plaintiffs' counsel pursuant to Rule 13, and accepted as related by the District Judge.

38. Until now, the City has never objected to the application of Rule 13 to *Floyd*. Were the record complete, the Motion Panel would be able to observe that the two cases are so inextricably intertwined that the complaint in *Floyd* refers to the *Daniels* case several hundred times.

39. NYPD's arguments to the contrary border on the hyper-technical. The City rests virtually its entire argument that the District Judge misapplied Rule 13 on a claim that the *Daniels* case was not "pending" when the *Floyd* case was deemed related in January, 2008 because it had been

internally marked as closed upon the execution of the settlement agreement.

40. The City ignores, however, that the *Daniels* settlement agreement provided for retained jurisdiction by the District Judge for an additional three years in order to supervise compliance., Thus, *Daniels* remained "pending" before the District Judge within the meaning of Rule 13 during the three year supervisory period , as evidenced by the City's willingness to permit the *Daniels* plaintiffs to retain the computer discs until the end of January, 2008, when the *Daniels* litigation actually terminated.

41.  It was open to NYPD to assert its narrow interpretation of Rule 13 when the District Judge accepted the *Floyd* case as related, but NYPD made no attempt to do so.

42. *Amici* believe that the District Judge correctly construed the term "pending" as the word is used in Rule 13 to cover the period of her active supervision of the settlement agreement. But even if she was wrong, the adoption of such a reasonable construction of "pending" is neither evidence of actual bias, nor conduct that could reasonably create an appearance of bias.

43. NYPD also accuses the District Judge of bias because several plaintiffs' lawyers designated several additional cases dealing with the

constitutionality of stop and frisk as related to *Floyd* which were accepted by the District Judge.

44. It is difficult to understand how uncoordinated decisions by independent lawyers to invoke Rule 13 can provide proof of judicial bias.

45. It should come as no surprise that NYPD's widespread use of controversial stop and frisk tactics generated numerous legal challenges, and that counsel would designate many of them as related to *Floyd*. Nor is it a surprise that a number of the designated cases were accepted by the District Judge as related. After all, the purpose of Rule 13 to permit consolidation of multiple cases raising closely connected issues before a single judge in the interests of judicial economy.

46. Indeed, on remand from the Motion Panel's October 31, 2013 ruling, both *Floyd* and *Ligon* were assigned to a single district judge in the interest of judicial economy.

47. Finally, NYPD argues that although the District Judge was careful not to speak about the stop and frisk case, press interviews constitute evidence of actual bias because the press described her as "the stop and frisk judge," and because she was critical of many of her judicial colleagues.

48. Press descriptions cannot, however, be the basis a finding of judicial bias. It would be a violation of the First Amendment to subject a judge to

a finding of actual bias on the basis of how the press describes her, whether or not she criticizes other judges.

49. Nor do the cherry-picked rulings by the District Judge complained of in the City's motion papers disclose anything remotely resembling actual bias, unless that term is re-defined as disagreement with the legal position of NYPD.

50. Reasonable people may disagree with the merits of some or all of the judge's rulings, but *amici* believe that it would be destructive of the judicial process, and a body-blow to the very idea of an independent judiciary, if disagreement over the merits of a District Judge's controversial rulings were to be transformed into an assault on the judge's integrity. See *United States v. Awadalah*, 436 F.3d 126 (2d Cir. 2006) (Parker, J.).

WHEREFORE, the undersigned respectfully move for an order or orders:

(a) granting them leave pursuant to Rules 21(b)(4), and 29 F.R. App. Proc., 28 U.S.C. § 2106, and the First and Fifth Amendments to the United States Constitution, to appear as *amici curiae* on behalf of the District Judge;

(b) setting a reasonable briefing schedule for the City's motion to vacate;

(c) dismissing the motion as jurisdictionally defective; and

(d) denying the motion on the merits; or in the alternative, vacating so much of the October 31 order of the Motion Panel as concerned the District Judge, without prejudice to renewal of the issue at an appropriate point in the proceedings.

In light of appellees' pending motions for en banc re-consideration of the Motion Panel's order dated October 31, 2013, *amici* request that the November 8, 2013 motion seeking leave to appear as *amici curiae*, together with this motion for leave to appear as *amici curiae*, and the letter of *amici* dated November 9, 2013, be circulated to the members of the Circuit Court eligible to sit en banc.

Dated:  November 12, 2013
        New York, New York

Respectfully submitted,

_____
Burt Neuborne
(Counsel of Record)
Norman Dorsen
Arthur R. Miller
Judith Resnik
Frederick A.O. Schwarz, Jr.
40 Washington Sq. South
New York, New York 10012
212 998-6172
burt.neuborne@nyu.edu

Attorneys for Hon. Shira A. Scheindlin