**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---------------------------------------------------------- x
DAVID FLOYD, et al.,                                       :
                                                           :
                    Plaintiffs-Appellees,            :
                                                           :  Docket No. 13-3088
             - against -                               :
                                                           :
CITY OF NEW YORK,                                          :
                                                           :
                    Defendant-Appellant.            :
---------------------------------------------------------- x


**REPLY OF THE PATROLMEN'S BENEVOLENT ASSOCIATION,
THE DETECTIVES ENDOWMENT ASSOCIATION,
THE LIEUTENANTS BENEVOLENT ASSOCIATION, AND
THE CAPTAINS' ENDOWMENT ASSOCIATION
<u>IN FURTHER SUPPORT OF MOTION TO INTERVENE</u>**


DECHERT LLP

Steven A. Engel
Edward A. McDonald
James M. McGuire
Elisa T. Wiygul
1095 Avenue of the Americas
New York, New York 10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

    POINT I:
    INTERVENTION BEFORE THIS COURT IS NECESSARY ..........................2

    POINT II:
    THE POLICE INTERVENORS SATISFY THE STANDARD FOR
    INTERVENTION ................................................................................................2

        A.    This Motion Is Timely..................................................................3

        B.    The Police Intervenors Have a Direct, Protectable Interest That
            Could Be Impaired by the Orders Under Review .................................4

        C.    The Police Intervenors' Interests Will Not Be Adequately
            Protected by the Existing Parties............................................................8

    POINT III:
    THE POLICE INTERVENORS HAVE ARTICLE III STANDING .................8

CONCLUSION .......................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Bates v. Jones*,
127 F.3d 870 (9th Cir. 1997) ....................8

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ....................2, 8

*Camreta v. Greene*,
131 S. Ct. 2020 (2011) ....................10

*Catanzano v. Wing*,
103 F.3d 223 (2d Cir. 1996) ....................3

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................3

*Diamond v. Charles*,
476 U.S. 54 (1986) ....................9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ....................9

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ....................9

*In re Holocaust Victim Assets Litig.*,
225 F.3d 191 (2d Cir. 2000) ....................3

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ....................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ....................9

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*,
467 F.3d 73 (2d Cir. 2006) ....................9

*PBA v. PERB*,
6 N.Y.3d 563 (2006) ....................6

*Tachiona v. United States*,
   386 F.3d 205 (2d Cir. 2004) ...................................................................................9

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977)...............................................................................................3

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ....................................................................1, 4, 5, 6

*United States v. City of Portland*,
   No. 12-cv-2265 (D. Or. Feb. 19, 2013) .................................................................5

*United States v. Yonkers Bd. Of Educ.*,
   801 F.2d 593 (2d Cir. 1986) ..................................................................................3

*Watertown v. N.Y.S. Pub. Emp. Relations Bd.*,
   95 N.Y.2d 73 (2000) ..............................................................................................7

**STATUTES**

N.Y. City Admin. Code § 12-307(b) ............................................................................7

**ADMINISTRATIVE DECISIONS**

*L. 2507 & L. 3621, DC 367 v. City of New York*,
   Decision No. B-20-2002, 69 OCB 20 (BCB 2002) ..............................................7

*Uniformed Firefighters Ass'n v. City of New York*,
   Decision No. B-39-2006, 77 OCB 39 (BCB 2006) ..............................................7

# INTRODUCTION

The Police Intervenors move to intervene to ensure this Court's review of the district court's fundamentally flawed opinions.  Plaintiffs oppose on the ground that the police unions lack a cognizable interest under either Federal Rule of Civil Procedure 24(a) or Article III of the Constitution.  Yet Plaintiffs do not, and cannot, deny that in the closest decision on point, the Ninth Circuit ruled directly to the contrary, recognizing that officers "have a protectable interest in the merits" of a decree that would purport to determine the rules for their conduct going forward. *See United States v. City of Los Angeles*, 288 F.3d 391, 399 (9th Cir. 2002).

Indeed, there can be no doubt that the Police Intervenors are fighting to participate in this appeal because this case focuses on and affects them and their members.  The district court's liability findings unfairly tar the reputations of tens of thousands of police officers, over an eight-year period, and the remedies ordered will directly impact those officers' day-to-day activities, as well as the unions' collective bargaining rights.  In the face of the universally acknowledged risk that the new Mayor may abandon this appeal, the Police Intervenors seek to vindicate their legal right to intervene, thereby preserving this Court's jurisdiction to review and correct a seriously flawed decision that otherwise would burden and tarnish the NYPD and its members for years to come.

# ARGUMENT

## POINT I

### INTERVENTION BEFORE THIS COURT IS NECESSARY

Because this Court has stayed the proceedings below, this case presents the unusual circumstance where intervention directly on appeal is necessary. *See* Opening Br. at 8-10. Plaintiffs recognize this Court's power to grant intervention, *Ligon* Opp. at 4-5, and they do not deny that the reason the district court ordinarily rules first—namely, that that court "usually ha[s] a better sense of the case's factual nuances," *id.* at 8 (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001))—simply does not apply here. The district court cannot act until the appeal is over, and the newly assigned district judge has less familiarity with the case than this Court. Plaintiffs' arguments thus reduce to the contentions that the Police Intervenors' motion is either untimely or not supported by a legal interest. *Floyd* Opp. at 8; *Ligon* Opp. at 3-8. These arguments fail in this Court, just as they would below, *see infra* Points II-III, and they do not provide an independent reason to deny intervention.

## POINT II

### THE POLICE INTERVENORS SATISFY THE STANDARD FOR INTERVENTION

In their Opening Brief, the Police Intervenors demonstrated their entitlement to intervene under Rule 24(a). Plaintiffs fail to rebut that showing.

2

**A.     This Motion Is Timely**

Plaintiffs argue that this motion is untimely, yet they miscast the standard. In marked contrast to the cases upon which Plaintiffs rely, the Intervenors seek to participate prospectively, as to the pending appeal and future remedial proceedings. Thus, the "critical inquiry" is whether the intervenor acted "promptly" after the judgment. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977); *see also* Opening Br. at 12 (citing cases). That question answers itself, since the Police Intervenors moved in the district court "promptly" after the sweeping decisions below and moved in this Court within a week after the stay.

Because the unions will file their briefs on the existing schedule, Plaintiffs would suffer no cognizable prejudice. Plaintiffs rely entirely on cases where intervenors sought "to join a case after the parties have negotiated for months" over a potential settlement or remedy. *Ligon* Opp. at 10.[1] But Plaintiffs do not identify any such negotiated settlement, and Intervenors here do not seek to re-open or redo a settled proceeding, but only to participate prospectively.

---

[1] *See, e.g.*, *United States v. Yonkers Bd. Of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986) (applicants asked the court to redo a three-month remedial proceeding); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (motion to intervene, filed three days before fairness hearing, was untimely); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (same); *Catanzano v. Wing*, 103 F.3d 223, 233-34 (2d Cir. 1996) (movants waited for "months (probably years)" before raising new arguments).

### B. The Police Intervenors Have a Direct, Protectable Interest That Could Be Impaired by the Orders Under Review

The Police Intervenors have multiple legal interests in this litigation that may be impaired absent intervention. The judgment below directly concerns the constitutionality of the officers' conduct, and the injunction will impact their work, training, safety and collective bargaining rights. The police unions therefore have a "protectable interest in the merits phase of the litigation." *City of Los Angeles*, 288 F.3d at 399-400.

The *Ligon* Plaintiffs assert only that *City of Los Angeles* was "mistaken." *Ligon* Opp. at 14. The *Floyd* Plaintiffs seek to distinguish that case on the ground that the complaint there also sought injunctive relief against some officers. *Floyd* Opp. at 13. Yet that distinction misreads the court's holding that "the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts," and "***[t]hese allegations*** are sufficient to demonstrate that the [union] had a protectable interest in the merits phase of the litigation." *City of Los Angeles*, 288 F.3d at 399 (emphasis added). Thus, the court emphasized the allegations, not the subject of the injunction.

Regardless, the targets of the injunction in *City of Los Angeles* provide no basis for distinction at all. The sweeping injunction in this matter may be directed at the City, but it has the necessary effect of compelling the City to change the

4

terms and conditions of the officers' employment and thereby bind the officers through the ties of their employment. The injunction will affect the officers' day-to-day activities, their rights, and their safety, just as if they were formal parties.

Indeed, the injunction could give the City the power to change the terms and conditions of the officers' employment in ways otherwise impermissible. The Police Intervenors have "state-law rights to negotiate about the terms and conditions of [their] members' employment . . . and to rely on the [resulting] collective bargaining agreement[s]." *City of Los Angeles*, 288 F.3d at 399-400. The City may disregard those rights only if it is compelled to take action as part of "court-ordered relief after a judicial determination of liability." *Id.* at 400. Because the liability findings may give the City that unilateral power, the Police Intervenors plainly have rights impaired by those findings.

Plaintiffs recognize that numerous courts have held that where an order "contains – *or even might contain* – provisions that contradict the terms" of the CBA, the unions have "a protectable interest." *United States v. City of Portland*, No. 12-cv-2265, at 7 (D. Or. Feb. 19, 2013) (emphasis added). Plaintiffs claim, however, that in all of these cases, it was "undisputed" that the decrees "would affect the intervenors' statutory and contractual rights." *Ligon* Opp. at 15. But that is demonstrably incorrect. In *City of Los Angeles*, for instance, the United States argued that the consent decree fully protected the unions' rights and dismissed

5

their concerns as "speculative." 288 F.3d at 401. The Ninth Circuit disagreed, because the consent decree would federalize what otherwise would be a state law process and because Rule 24 required only that the order "'may' impair rights 'as a practical matter,'" not that it "'necessarily'" would do so. *Id.*

Plaintiffs grossly diminish the unions' rights under New York law by claiming that the sweeping remedial order, which involves "training, supervision, discipline, stop documentation, [and] body worn cameras," *Floyd* Opp. at 13-14, does not affect "as a practical matter" a single employment condition subject to bargaining. Apparently without irony, Plaintiffs claim that the unions may not bargain over any of these matters because New York has a strong public policy in protecting "the discretion of the commissioners." *Ligon* Opp. at 14 (quoting *PBA v. PERB*, 6 N.Y.3d 563, 576 (2006)).[2] Needless to say, changes ordered and supervised by the district court do not reflect the exercise of such discretion; they are not management decisions warranting deference. In any event, Plaintiffs concede that the unions may bargain over "issues collateral" to such policies. *Id.* at 15. Those interests would suffice for intervention, since a successful appeal would vacate the policy "choice" and thus the need to bargain over its effects.

---

[2] Plaintiffs omit from their quotation of *PBA v. PERB* the Court of Appeals' statement that the commissioner's interest in discipline "must be qualified today; . . . the need for authority over police officers will sometimes yield to the claims of collective bargaining." 6 N.Y.3d at 576.

Plaintiffs further overstate the sweep of the "management rights" provisions under New York law. First, it is an open question whether the provision on which Plaintiffs rely, N.Y. City Admin. Code § 12-307(b), is preempted by the state labor law. *See Uniformed Firefighters Ass'n v. City of New York*, Decision No. B-39-2006, 77 OCB 39 (BCB 2006) (dissenting op. at 2-3, 8-9). Under that state law, to overcome the presumption in favor of bargaining, the statute must be "'plain' and 'clear'" or "leave[] 'no room for negotiation.'" *Watertown v. N.Y.S. Pub. Emp. Relations Bd.*, 95 N.Y.2d 73, 78 (2000) (internal citations omitted). Plaintiffs identify no "plain" and "clear" statute excluding the many subjects of the remedial order from bargaining. And even where the management rights provision applies, state and local law find exceptions. *See, e.g., L. 2507 & L. 3621, DC 367 v. City of New York*, Decision No. B-20-2002, 69 OCB 20, at 5-6 (BCB 2002) (training is a subject for bargaining when it "is required by the employer as a qualification for continued employment or improvement in pay or work assignments").

What is decisive here is not how the state labor boards might decide a particular question, but that these matters both are arguable and ordinarily could be submitted to state proceedings. The unions plainly have the right to ensure that the decisions do not unnecessarily prejudice their rights under state law.

7

### C. The Police Intervenors' Interests Will Not Be Adequately Protected by the Existing Parties

Plaintiffs cannot rebut the common-sense showing that the City may not adequately represent the unions' interests. Plaintiffs argue for a presumption of adequacy where "the putative intervenor and a named party have the same ultimate objective" in the proceeding. *Butler, Fitzgerald & Potter, P.C. v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001). But such a presumption is rebutted where there is "adversity of interest" or "nonfeasance." *Id.* at 180.

If the City withdraws its appeal or significantly compromises this litigation, the unions' interests would unquestionably be adverse to the City's. The mere possibility of such a divergence is sufficient. *See Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997). Obviously, the Police Intervenors cannot rely upon the City to protect their collective bargaining rights, and the incoming Mayor's prior statements raise a substantial question about whether the City will adequately protect the unions' interests in overturning decisions that unfairly besmirch the reputation of the officers of the NYPD and burden their efforts.

## POINT III

## THE POLICE INTERVENORS HAVE ARTICLE III STANDING

Plaintiffs also oppose intervention on the ground that the Police Intervenors lack Article III standing. As they tacitly recognize, this argument is premature. *See Floyd* Opp. at 9. Intervenors need not show separate standing unless or until

8

the City withdraws its appeal. *Diamond v. Charles*, 476 U.S. 54, 68 (1986). Even so, the Police Intervenors can readily show constitutional standing.

As the Court has recognized, "[t]o have standing at the appellate stage . . . a litigant must demonstrate 'injury caused by the judgment rather than injury caused by the underlying facts.'" *Tachiona v. United States*, 386 F.3d 205, 211 (2d Cir. 2004). The litigant need **not** be bound by the judgment, *id.*, but must demonstrate, *inter alia*, an "injury in fact" that is "concrete and particularized." *Id.* at 210, 212; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[3]

The Article III standing requirement is designed to separate plaintiffs who allege no more than "generalized grievances," such as the referendum sponsors in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), from those who can demonstrate a concrete stake in the proceeding. So long as the plaintiff can show such an injury in fact, Article III does not pose a significant bar. Thus, an environmental plaintiff may demonstrate Article III standing simply by alleging that an unlawful act would diminish "'the aesthetic and recreational values'" of an area the plaintiff uses. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000). The Fifth Circuit recognized a union's standing to intervene and challenge

---

[3] The *Floyd* Plaintiffs appear to conflate this standard with that governing appeals by a **non-party**. *See Floyd* Opp. at 9; *see also Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 77 (2d Cir. 2006) (distinguishing non-party standing to appeal from Article III standing).

9

on appeal a ruling affecting its members' wages. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 456-58 (5th Cir. 2005). And in a closely analogous case, the Supreme Court found that a government officer had standing to appeal a finding that his actions were unconstitutional, even though he had prevailed on a qualified immunity defense, because the "judgment may have prospective effect," since "the official regularly engages" in the acts found unconstitutional. *Camreta v. Greene*, 131 S. Ct. 2020, 2029 (2011).

The Police Intervenors have amply demonstrated a concrete "injury caused by the judgment." Far from creating only a "generalized grievance," the judgments will directly impair the police officers' day-to-day activities, including training, discipline, paperwork, and equipment, as well as their professional reputations and their collective bargaining rights. The injunction requires the City to compel its officers to comply with the district court's view of the law and the ostensibly appropriate remedies. While the Police Intervenors are not presently obliged to show Article III standing, they readily can do so.

## CONCLUSION

For the reasons stated above and in their Opening Brief, the Police Intervenors respectfully request that the Court grant its motion to intervene.

Dated:       December 5, 2013
             New York, New York

                                                         Respectfully submitted,

                                                        <u>/s/ Steven A. Engel</u>
                                                        Steven A. Engel
                                                        Edward A. McDonald
                                                        James M. McGuire
                                                        Elisa T. Wiygul
                                                        DECHERT LLP
                                                        1095 Avenue of the Americas
                                                        New York, New York 10036
                                                        T: (212) 698-3693
                                                        F: (212) 698-3599
                                                        steven.engel@dechert.com

*Attorneys for Proposed Intervenors the Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives Endowment Association, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York, Inc.*

11