**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

———————————————————— x

DAVID FLOYD, et al.,                          :
                                              :
        Plaintiffs-Appellees,          :
                                              :  Docket No. 13-3088
       - against -                    :
                                              :
CITY OF NEW YORK,                             :
                                              :
        Defendant-Appellant.          :

———————————————————— x


**MEMORANDUM OF LAW OF**
**THE PATROLMEN'S BENEVOLENT ASSOCIATION,**
**THE DETECTIVES ENDOWMENT ASSOCIATION,**
**THE LIEUTENANTS BENEVOLENT ASSOCIATION, AND**
**THE CAPTAINS' ENDOWMENT ASSOCIATION**
**IN OPPOSITION TO THE CITY OF NEW YORK'S**
**<u>MOTION FOR REMAND</u>**

DECHERT LLP

Steven A. Engel
Edward A. McDonald
James M. McGuire
Elisa T. Wiygul
1095 Avenue of the Americas
New York, New York  10036
T: (212) 698-3693
F: (212) 698-3599
steven.engel@dechert.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

POINT I         THE CITY SHOULD NOT BE PERMITTED TO PREVENT REVIEW
OF THE DISTRICT COURT'S FLAWED AND HARMFUL RULINGS ......... 3

POINT II       THE COURT SHOULD DECIDE THE MOTION TO INTERVENE
NOW IN THE INTEREST OF JUDICIAL EFFICIENCY ................................... 9

POINT III     THE POLICE INTERVENORS HAVE BEEN HARMED BY THE
DISTRICT COURT'S RULINGS AND HAVE STANDING TO
PURSUE THIS APPEAL .................................................................................. 11

POINT IV     IN THE ALTERNATIVE, THIS COURT SHOULD VACATE THE
RULINGS BELOW OR ORDER THE DISTRICT COURT TO DO SO
AS A CONDITION OF IMPOSING A CONSENT DECREE ........................... 13

CONCLUSION ................................................................................................ 16

**TABLE OF AUTHORITIES**

CASES

**Page(s)**

*ACORN v. United States*,
618 F.3d 125 (2d Cir. 2010) ...................................................................12, 13

*al-Marri v. Pucciarelli*,
534 F.3d 213 (4th Cir. 2008) ...............................................................14

*al-Marri v. Spagone*,
550 U.S. 1220 (2009)...........................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................6

*Brown v. City of Oneonta*,
221 F.3d 329 (2d Cir. 2000) ..................................................................6

*Camreta v. Greene*,
131 S. Ct. 2020 (2011).........................................................................13

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)................................................................................7

*Cooper v. U.S. Postal Serv.*,
577 F.3d 479 (2d Cir. 2009) ..................................................................7

*Gully v. Nat'l Credit Union Admin. Bd.*,
341 F.3d 155 (2d Cir. 2003) ................................................................12

*Haley v. Pataki*,
60 F.3d 137 (2d Cir. 1995) ..................................................................13

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988)..............................................................................6

*Penguin Books USA Inc. v. Walsh*,
929 F.2d 69 (2d Cir. 1991) ..................................................................15

*Rahman v. Chertoff*,
530 F.3d 622 (7th Cir. 2008) ................................................................5

*Tachiona v. United States*,
    386 F.3d 205 (2d Cir. 2004) ..............................................................11

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*,
    513 U.S. 18 (1994)...............................................................................14

*United States v. City of Detroit*,
    712 F.3d 925 (6th Cir. 2013) ............................................................12

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ...............................................2, 10, 12

*United States v. Hays*,
    515 U.S. 737 (1995).........................................................................6, 7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).........................................................................5

## OTHER AUTHORITIES

City Press Release, *Mayor de Blasio Announces Agreement in Landmark
    Stop-And-Frisk Case* (Jan. 30, 2014), *available at*
    http://www1.nyc.gov/office-of-the-mayor/news/726-14/mayor-de-blasio-
    agreement-landmark-stop-and-frisk-case#/0 .......................................4

Katherine Macfarlane, *New York City's Stop and Frisk Appeals Are Still
    Alive*, Practicum, Brooklyn Law School (Dec 26, 2013), *available at*
    http://practicum.brooklaw.edu/articles/new-york-city%E2%80%99s-stop-
    and-frisk-appeals-are-still-alive.........................................................7

The Patrolmen's Benevolent Association of the City of New York, Inc. ("PBA"), the Detectives Endowment Association, Police Department, City of New York, Inc. ("DEA"), the Lieutenants Benevolent Association of the City of New York, Inc. ("LBA"), and the Captains' Endowment Association of New York, Inc. ("CEA," and collectively, the "Police Intervenors") respectfully submit this memorandum in opposition to the Motion to Remand filed by Appellant the City of New York (the "City").

## INTRODUCTION

The Police Intervenors represent more than 29,000 of the 35,000 members of the New York City Police Department ("NYPD"). These men and women are New York's Finest. They are part of this City, they hail from all five of its boroughs, and their membership reflects the City's broad diversity of racial and ethnic backgrounds. Every day, the NYPD's officers place themselves on the line for the people of the City whom they protect and serve, and it is through the officers' hard work, professionalism, and bravery that the City has managed to reduce crime so dramatically over the past two decades.

The district court's decisions below give short shrift to all of this. Pursuant to a series of irregular proceedings, where the district court took actions that compromised the appearance of impartiality and conducted a "trial" that purported to review millions of discrete and individual actions, the district court found

1

constitutional violations where there were none.  The court entered findings that unfairly besmirch the reputations of the men and women of the NYPD, imposed facially overbroad remedies, and exposed the NYPD to an unwarranted and indefinite period of federal supervision.  The contemplated injunction would directly burden the officers' daily work and would impair the police unions' collective bargaining and other rights.

The Police Intervenors are fighting to participate in this appeal to protect their reputations and to avoid these unwarranted burdens.  The motion to intervene is fully briefed, and it is well-grounded in the law.  *See, e.g.*, *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002).  The City has already consented to it. If the Court were to grant the intervention motion, then the Police Intervenors would proceed with this appeal and ensure that the district court's fundamentally flawed decisions obtain full review on the merits.

Were the Court simply to remand now, however, and leave the question of intervention to the district court, then the parties would inevitably return to this Court, either for an appeal on the merits or on the intervention question, resulting in unnecessary and duplicative proceedings, as well as months of additional delay. In accordance with the law, and in the interest of fairness and judicial efficiency, the Police Intervenors respectfully request that the Court grant the motion, deny the City's request for a remand, and order the merits briefing to go forward.

In deciding the motion now before the Court, the question is not whether elections have consequences, or whether a new Administration may pursue different policies from its predecessor. The City may pursue whatever police policies its leadership deems wise and expedient, so long as it does so consistent with the rights of the police unions. In the context of this case, however, given the pending motion to intervene, the City should not be permitted to avoid public scrutiny of its own policy choices under the guise of acceding to the demonstrably erroneous decisions below.

## POINT I

### <u>THE CITY SHOULD NOT BE PERMITTED TO PREVENT REVIEW OF THE DISTRICT COURT'S FLAWED AND HARMFUL RULINGS</u>

The City has asked that the Court provide a limited remand of the two appeals "for 45 days to permit the parties to explore a resolution." Declaration of Jeffrey D. Friedlander in Support of Motion for Limited Remand to the District Court Motion ¶ 5. The City has no automatic right to such a limited remand, and its request invokes the discretion of the Court. Because the district court's decisions are demonstrably flawed, and because the Police Intervenors' right to intervene and prosecute this appeal would effectively moot the City's present effort to resolve it, the Court should exercise its discretion to address the intervention motion prior to ruling on the motion to remand.

While the City's motion expresses an interest in "explor[ing] a resolution," the City was considerably more explicit about its intentions in a press release issued on the same day.  According to the City, the purpose of remand was to "fully embrace [the] stop-and-frisk reform" ordered by the district court.  City Press Release, *Mayor de Blasio Announces Agreement in Landmark Stop-And-Frisk Case* (Jan. 30, 2014), *available at* http://www1.nyc.gov/office-of-the-mayor/news/726-14/mayor-de-blasio-agreement-landmark-stop-and-frisk-case#/0 ("Press Release").  To that end, the City has reached a settlement agreement with Plaintiffs.  *Id.*

While the City has declined to make that agreement public, it has expressed the intention to accept the district court's liability findings and the full scope of the now-stayed injunction.  The City will agree to place the NYPD under the supervision of a federal monitor empowered to report to the federal court "on the city's progress meeting its obligation to abide by the United States Constitution." *Id.*  That monitorship will last for a minimum of three years, at which point the City could petition to end the monitorship, if it can show that the NYPD is "in substantial compliance with the decree."  *Id.*  All this, the City intends to do freely and of its own accord.

The City's decision to acquiesce in the district court's injunction cannot possibly be justified by the belief that Plaintiffs are likely to win on appeal.  The

4

prior proceedings demonstrate that the district court's decisions will not withstand this Court's scrutiny. After the City filed a motion to stay the judgment pending appeal, this Court heard oral argument for several hours, including on the City's likelihood of success on the merits, and the Court invited the Police Intervenors and *amici* on both sides to participate. The Court found that the City had demonstrated sufficient cause to stay the judgment pending appeal. While the Court did not rule on the merits of the ultimate appeal, the Court did take the extraordinary step of ordering the disqualification of the district judge, finding that her actions had compromised the appearance of impartiality as both the judge and the jury (*i.e.*, the trier of fact) in the proceedings below.

On December 10, 2013, the City itself filed a 110-page appeal brief that demonstrated that the district court opinions were premised on numerous errors of law. *See* Defendant-Appellant's Brief, Dkt. No. 347-1 (*Floyd*) ("City Appeal Br."). These errors included, but are hardly limited to, the following:

- The district court should never have certified a class action challenge to 4.4 million *Terry* stops, given that the lawfulness of each stop turned upon its own individual facts and circumstances. City Appeal Br. at 30-34. That erroneous class certification decision led to a fundamental distortion of the trial process. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011); *Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008).

- The district court erred by permitting Plaintiffs to mount a challenge to millions of *Terry* stops through statistical evidence derived entirely from the UF-250 forms, which were not, and never have been, used as the sole

evidence to justify the constitutionality of a particular stop, much less 4.4 million stops.  City Appeal Br. at 35-49.

- The district court erroneously found that the City's use of crime suspect data in making stops constituted intentional racial discrimination, even though the statistics actually demonstrated that the percentage of black and Hispanic persons stopped on suspicion closely tracked the actual demographics of crime suspects.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Brown v. City of Oneonta*, 221 F.3d 329 (2d Cir. 2000); City Appeal Br. at 49-50, 55-62, 66.

- The district court erred in concluding that the City had demonstrated "deliberate indifference" to its constitutional obligations because the City had repeatedly taken affirmative measures to ensure that its stops and frisks were conducted in accord with constitutional principles.  City Appeal Br. at 68-85.

- The district court's sweeping remedy, which provided for federal judicial management of the NYPD's training, supervision, monitoring, discipline, and equipment policies, was dramatically overbroad, even if the findings of liability had any basis.  *Id.* at 85-92.

- The district judge's own actions had created an appearance of partiality that violated the City's due process rights and warranted vacatur of the decision.  *See, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988); City Appeal Br. at 92-100.  The questions raised by the district judge's actions were particularly harmful to the process, since she sat as the trier of fact, as well as the judge in the case.

In addition to these and other arguments that the City has advanced and not withdrawn, Plaintiffs' claims suffer from a fundamental jurisdictional flaw.

Article III standing is an issue that the Court may raise *sua sponte* at any time, and that **may not be waived by the parties**.  *See, e.g.*, *United States v. Hays*, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver . . . .").

Accordingly, the Court is "required to address the issue even if the courts below

6

have not passed on it, and even if the parties fail to raise the issue before us." *Id.*
(internal quotations omitted); *see also Cooper v. U.S. Postal Serv.*, 577 F.3d 479,
489 (2d Cir. 2009).

Under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), Plaintiffs lacked
Article III standing to proceed with their claims.  Like the plaintiffs there, the fact
that the named plaintiffs had previously suffered an alleged constitutional injury
because of a police stop does not itself establish a sufficiently plausible threat of
future injury so as to justify an injunction.  *See id.* at 105 ("That Lyons may have
been illegally choked by the police . . . , while presumably affording Lyons
standing to claim damages against the individual officers and perhaps against the
City, does nothing to establish a real and immediate threat that he would again be
stopped for a traffic violation, or for any other offense, by an officer or officers"
who would engage in the same unconstitutional conduct at issue.); *see also*
Katherine Macfarlane, *New York City's Stop and Frisk Appeals Are Still Alive*,
Practicum, Brooklyn Law School (Dec 26, 2013), *available at*
http://practicum.brooklaw.edu/articles/new-york-city%E2%80%99s-stop-and-
frisk-appeals-are-still-alive.  Plaintiffs lacked Article III standing to seek judicial
resolution of their Fourteenth Amendment claim for the additional reason that no
named class members had suffered intentional racial discrimination.  *See* City
Appeal Br. at 51 n.13.

7

There can be no serious doubt that the City's appeal brief, as well as the record before this Court, have offered compelling arguments that the district judge's decisions were fatally flawed. Nonetheless, without replacing its own brief or questioning its own legal arguments, the City has asked the Court to provide a temporary remand so that the City now may acquiesce in the flawed injunction issued below. The City did not consult with the Police Intervenors before reaching this decision, and the settlement appears to be heedless of the reputational harm that the Orders below have caused to police officers, much less of the burdens that the contemplated reforms would impose upon their daily lives, and on the collective bargaining rights of the Police Intervenors.

The City's request to remand this case is premature. The City has already consented to the Police Intervenors' motion to intervene, and it cannot withdraw that consent now that the motion has been filed. *See* Motion to Intervene, Dkt. Nos. 252 (*Floyd*), 178 (*Ligon*), at 1. Plaintiffs have opposed the intervention motion, and it has been fully briefed before this Court. Before the Court considers the City's request for a limited remand, the Police Intervenors respectfully submit that the Court should consider and grant the fully briefed intervention motion. If the Court grants the motion, then the Police Intervenors will carry this appeal forward and obtain either a ruling on the merits or a ruling that the district court lacked jurisdiction in the first place. If the Court were to deny the motion and find

8

Article III standing, then the City's acquiescence in the flawed decisions below would have suffered nothing but a brief delay.

If the Court decides to schedule oral argument on the motion to intervene, then the Police Intervenors would respectfully submit that the Court may also wish to order expedited briefing on the question of Plaintiffs' Article III standing. The jurisdictional issue is unwaivable, and it is independent both of the merits and the Police Intervenors' motion. A consolidated oral argument would provide the quickest and most efficient way for the Court to determine the appropriate next step in this critically important case.

## POINT II

### <u>THE COURT SHOULD DECIDE THE MOTION TO INTERVENE NOW IN THE INTEREST OF JUDICIAL EFFICIENCY</u>

The Police Intervenors' motion to intervene also should be decided in the interest of judicial efficiency. Given that the motion to intervene has been fully briefed, and the City has already filed its Appellant's brief, the Court is capable of deciding the motion and then proceeding to hear the merits of this appeal within months. If the Court were to remand now, however, then the Police Intervenors would press their motion to intervene in the court below. The district court proceedings would likely lead to additional delay that would be unnecessary were the Court to consider the pending intervention motion.

In addition, the soundness of the liability findings is itself an issue that could affect the scope of any consent decree.  A federal court remedial order, when issued pursuant to a liability finding, may permit the district court to order changes in employment practices that would otherwise be subject to bargaining under state law.  *See City of Los Angeles*, 288 F.3d at 400 (holding that police unions' state law rights may not be abridged "[e]xcept as part of court-ordered relief after a judicial determination of liability").  Thus, whether or not the liability determination stands may have a significant impact on the scope of any consent decree that the district court might ultimately issue, as well as on the Police Intervenors' state law collective bargaining rights.  *See* Motion to Intervene, Dkt. Nos. 252 (*Floyd*), 178 (*Ligon*), at 15.

Following a remand, if the district court were to grant the Police Intervenors' motion to intervene for purposes of appeal, then the parties would return to the Court for the merits appeal months down the road.  Alternatively, if the district court were to deny the motion to intervene, then the Police Intervenors would take an appeal of the denial to this Court, where the ultimate issue would be whether they are entitled to press the appeal on the merits.  Either way, a remand now would necessitate additional proceedings and additional appeals, all of which would be unnecessary if the Court were to decide the Intervenors' motion prior to deciding the City's motion to remand.

10

Under the circumstances, the most efficient course of action is to decide this appeal and then, if any part of the case remains, remand for further proceedings consistent with this Court's holdings.  No legitimate purpose could be served by delaying review of the district court's injurious findings or by assisting the City in shifting the focus away from what should be the real question before the Court, namely whether any systemic constitutional violations ever occurred.

### POINT III

### <u>THE POLICE INTERVENORS HAVE BEEN<br>HARMED BY THE DISTRICT COURT'S RULINGS<br>AND HAVE STANDING TO PURSUE THIS APPEAL</u>

As the Police Intervenors argued at greater length in their motion to intervene, they have a vital interest in seeing the liability and remedial rulings below reviewed, and this interest suffices both for Article III standing and for Federal Rule of Civil Procedure 24.  "To have standing at the appellate stage . . . a litigant must demonstrate 'injury caused by the judgment rather than injury caused by the underlying facts.'"  *Tachiona v. United States*, 386 F.3d 205, 211 (2d Cir. 2004).

The Police Intervenors have demonstrated that they have sustained a concrete injury as a result of the district court's rulings because, *inter alia*, their daily work lives will be changed substantially if the remedies embodied in the district court's Order—now to be embodied in a consent decree—are ever to be

implemented, and because their collective bargaining rights are implicated by the district court decision. *See* Police Intervenors' Reply in Support of Motion to Intervene, Dkt. No. 342 (*Floyd*), 246 (*Ligon*), at 8-10.

Those interests likewise satisfy the requirements of Federal Rule of Civil Procedure 24(a). *See, e.g.*, *City of Los Angeles*, 288 F.3d at 399 ("[T]he Police League claims a protectable interest because the complaint seeks injunctive relief against its member officers and raises factual allegations that its member officers committed unconstitutional acts in the line of duty. These allegations are sufficient to demonstrate that the Police League had a protectable interest in the merits phase of the litigation."); *United States v. City of Detroit*, 712 F.3d 925, 926-27, 929-30, 932 (6th Cir. 2013) (permitting unions to intervene to object to judge's order that mandated changes that affected the unions' rights).

The Police Intervenors also have a concrete interest here because the Liability Order causes them grave reputational harm and may affect their future conduct. "The Supreme Court has long recognized that an injury to reputation will satisfy the injury element of standing." *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 161-62 (2d Cir. 2003) (citing cases). Thus, in *Gully*, this Court found that the appellant had standing to challenge findings that she had engaged in misconduct, even though no other punishment had been imposed on her. *Id.* at 162. Similarly, in *ACORN v. United States*, 618 F.3d 125 (2d Cir. 2010), this

12

Court found that even a memorandum that was purportedly rescinded but which contained restrictions on the plaintiff that remained in force provided the plaintiff with standing to challenge the reputational harm done by the memorandum. *Id.* at 134-35; *see also Camreta v. Greene*, 131 S. Ct. 2020, 2029 (2011) (finding standing where the "judgment may have prospective effect," since "the official regularly engages" in the acts found unconstitutional). These cases underline the grave and direct harm that the men and women of the NYPD have suffered as a result of the district court's findings. It is vital that those rulings be reviewed on the merits, with the Police Intervenors added as appellants.

### POINT IV

### IN THE ALTERNATIVE, THIS COURT SHOULD VACATE THE RULINGS BELOW OR ORDER THE DISTRICT COURT TO DO SO AS A CONDITION OF IMPOSING A CONSENT DECREE

In the alternative, if the Court chooses to grant the City's request for a remand for purposes of settlement, it should exercise its discretion to order the vacatur of the decisions below as a condition of the entry of any consent decree. The proposed consent decree would amount to the voluntary compliance by the City with the judgment of the district court. Under such circumstances, the Court has discretion to vacate the underlying decision. *See Haley v. Pataki*, 60 F.3d 137, 142 (2d Cir. 1995) (citing *N.Y. City Employees' Ret. Sys.*, 969 F.2d 1430, 1435 (2d Cir. 1992)).

Absent "extraordinary circumstances," a lower court decision will not be vacated upon settlement, because a losing party should not be permitted to destroy a binding judgment "as a refined form of collateral attack on the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27, 29 (1994). But the Supreme Court also has made clear that such extraordinary circumstances do exist. For instance, in *al-Marri v. Spagone*, 550 U.S. 1220 (2009), the Court granted the motion of the United States—following a change of presidential administration—to transfer the petitioner from military custody to the custody of the Attorney General and to vacate the judgment below, which had ruled that the petitioner was being held in military custody unconstitutionally. *See al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008) (en banc) (per curiam), *vacated sub nom. al-Marri v. Spagone*, 550 U.S. 1220 (2009). This voluntary action by the government, the losing party, had the effect of preventing the Supreme Court from reviewing a decision adverse to the government, yet the Court vacated the Fourth Circuit decision.

The case for vacatur here is even stronger. The losing party at trial, the City, has done an about face and now embraces, and wishes to clothe itself in the authority of, a judicial decree based upon findings of wrongdoing made by a now-disqualified district judge. This is not a case of a losing party seeking to moot what it regards as an unfavorable precedent—precisely the opposite. This is a case

14

of parties seeking to preserve a judgment for the purpose of shielding it from appellate review. As this Court has stated, where "appellees voluntarily removed from us the power to make any decision in this matter, thus depriving appellants of their statutory right to review, . . . . [w]ere we to maintain the district court judgment, we would be sanctioning conduct which manipulates procedure so as to make lower court judgments both binding and unreviewable. This, we are not willing to do." *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 73-74 (2d Cir. 1991). Accordingly, this case presents "exceptional circumstances" warranting the Court's exercise of its discretion to vacate the judgment.[1] The lower court's decision should not be permitted to stand as "both binding and unreviewable," particularly where it would affect the rights of non-parties like the Police Intervenors.

Finally, at a minimum, if the case is to be remanded, it is imperative that the voice of the Police Intervenors be heard in the district court's consideration of any consent decree. The motion to intervene was fully briefed before the district court prior to the issuance of a stay and the re-assignment of the district judge. If this Court grants the motion for a limited remand, then the Police Intervenors

---

[1]    This is particularly true given that, as noted above, there is at least a serious question as to whether Plaintiffs satisfied Article III standing in the district court. As noted *supra*, the Court may wish to request separate briefing on this issue prior to ruling on the City's motion to remand.

15

respectfully request that the Court instruct the district court to decide their motion to intervene prior to considering the City's proposed consent decree, and to permit an expedited appeal of that decision, in the event intervention is denied.  In addition, as discussed, the Police Intervenors would respectfully request that the Court provide that in the event any consent decree is accepted, then the district court shall vacate the liability findings as a condition of its entry.

## CONCLUSION

For the foregoing reasons, the Police Intervenors respectfully request that the Court deny the motion to remand, grant the Police Intervenors' motion to intervene, and permit them to prosecute the appeal on the merits.  In the alternative, they request that the Court grant such alternative relief as requested herein, and as the Court deems just and proper.

Dated:     February 7, 2014
           New York, New York

                       Respectfully submitted,

                       /s/ Steven A. Engel
                       Steven A. Engel
                       Edward A. McDonald
                       James M. McGuire
                       Elisa T. Wiygul
                       DECHERT LLP
                       1095 Avenue of the Americas
                       New York, New York 10036
                       T: (212) 698-3693
                       F: (212) 698-3599
                       steven.engel@dechert.com

                       *Attorneys for Proposed Intervenors the Patrolmen's Benevolent Association of the City of New York, Inc., the Detectives Endowment Association, Inc., the Lieutenants Benevolent Association of the City of New York, Inc., and the Captains' Endowment Association of New York, Inc.*

17